LANDELIUS v SACKELLARES

LANDELIUS v UNIVERSITY OF MICHIGAN BOARD OF REGENTS

LANDELIUS v RAFKO

Docket Nos. 104203, 104204, 104946. Decided December 17, 1996. On applications by the plaintiff for leave to appeal, the Supreme Court, in lieu of granting leave to appeal in the Washtenaw Circuit Court cases, reversed the judgments of the Court of Appeals and the circuit court and remanded for further proceedings. In the Monroe Circuit Court case, the Court denied leave to appeal.

Larry Landelius, as next friend of Joseph Landelius, a minor, brought an action in the Monroe Circuit Court against Peter L. Rafko, the driver of the automobile that struck Joseph, leaving him severely and permanently injured. The defendant alleged that the cause of the accident was an epileptic seizure he suffered. The parties subsequently settled.

About the same time, the plaintiff brought a separate action in the Washtenaw Circuit Court against the University of Michigan, J. Chris Sackellares, M.D., and Sharon Amor, R.N., alleging negligence in diagnosing and treating Mr. Rafko's epilepsy and preventing him from driving. During discovery in the Monroe Circuit Court case, Mr. Rafko had permitted the plaintiff access to his hospital records, limited to a one-year period for use in that suit. When the plaintiff sought to use the records in the Washtenaw Circuit Court suit, the defendants moved for summary disposition under MCR 2.116(C)(10) on the ground that Mr. Rafko had not agreed to such disclosure. The court, Patrick J. Conlin, J., granted the motion.

The plaintiff then brought a second action in the Monroe Circuit Court against Mr. Rafko, alleging breach of the settlement agreement with respect to the release of his records. The court, Michael W. LaBeau, J., granted summary disposition for the defendant, agreeing that nothing in the release documents required disclosure in the Washtenaw Circuit Court case.

The Court of Appeals, SAWYER, P.J., and R. C. ANDERSON, J. (MARILYN KELLY, J., dissenting), in the Washtenaw Circuit Court case (Docket Nos. 163571, 163572), and CORRIGAN, P.J., and G. S. ALLEN, JR., J. (O'CONNELL, J., dissenting), in the Monroe Circuit Court case

(Docket No. 172077), affirmed in unpublished opinions per curiam. The plaintiff seeks leave to appeal.

In an opinion per curiam, signed by Chief Justice BRICKLEY, and Justices CAVANAGH, RILEY, MALLETT, and WEAVER, the Supreme Court *held*:

Under the circumstances, Mr. Rafko is estopped from asserting the privilege against disclosing medical records with respect to the records previously disclosed.

The rationale for the physician-patient privilege does not apply where, as in this case, a patient seeks to shield the information from the same persons to whom it earlier was disclosed. An implied waiver of the privilege occurred in this case with regard to litigation arising from the same underlying event: the accident in which Mr. Rafko lost control of his car and injured Joseph Landelius. Having authorized the disclosure of his medical records in that case, and having given deposition testimony about his care and treatment, Mr. Rafko is estopped to recapture the physician-patient privilege in the Washtenaw Circuit Court case involving the university defendants.

Reversed and remanded.

Justices LEVIN and BOYLE would grant leave to appeal.

*Ferriby & Houston* (by *Robert L. Ferriby, Jr.*, and *Susan J. Zbikowski*) for the plaintiff.

*Sullivan, Ward, Bone, Tyler & Asher, P.C.* (by *Michelle A. Thomas*), for defendants University of Michigan Board of Regents and Sackellares.

*Ready, Sullivan & Ready, LLP* (by *Christina D. Hills*), for defendant Rafko.

PER CURIAM. The pivotal issue in these cases is whether a defendant who discloses his medical records in an automobile-negligence action may later assert the physician-patient privilege of MCL 600.2157; MSA 27A.2157 in a related lawsuit to which he is not a party. We hold that, in these circumstances, the defendant is estopped to assert the privilege with regard to medical records previously disclosed.

I

In October 1988, Peter L. Rafko lost control of his car on a Monroe street and struck seven-year-old Joseph Landelius. The child was severely and permanently injured.

Through a conservator, the child brought an automobile-negligence action in the Monroe Circuit Court against Mr. Rafko. In response, Mr. Rafko contended that the reason he had lost control of his vehicle was because he had suffered a seizure. The plaintiff settled with Mr. Rafko's insurance company in mid-1992.

About this same time, the conservator started a separate negligence action in the Washtenaw Circuit Court against the University of Michigan[1] and Chris Sackellares, M.D.[2] The complaint alleged that the defendants were liable for Joseph's injuries because they failed to properly diagnose and treat Mr. Rafko for epilepsy, and to prevent him from driving a car.

In the course of discovery in the automobile-negligence case in the Monroe Circuit Court, Mr. Rafko had given the plaintiff access to his hospital records. The authorization specified that it was for a one-year period, beginning January 7, 1991, and for use in the evaluation of a pending lawsuit.

The plaintiff subsequently sought to use this same information in the Washtenaw Circuit Court against the university defendants. They moved for summary disposition under MCR 2.116(C)(10), however, on the ground that Mr. Rafko had not agreed to disclose his

---

[1] The suit against the university was refiled in the Court of Claims. The Washtenaw Circuit Court subsequently was assigned to act as the Court of Claims in that action, and the matters were consolidated.

[2] A registered nurse named Sharon Amor also was named as a defendant, but she was not served and is not a part of this appeal.

medical records in the Washtenaw case. Without this evidence, the plaintiff would be unable to present a prima facie case, and the defendants would be unable to defend, they argued.

The Washtenaw Circuit Court agreed, and granted the motion for summary disposition at the conclusion of a hearing.

A short time later, the plaintiff filed a second lawsuit against Mr. Rafko in the Monroe Circuit Court. This time he alleged that Mr. Rafko had breached the terms of the settlement agreement in the Monroe Circuit Court automobile-negligence case. The release documents in that case had specified that the settlement would not affect the liability of any of the university defendants, the plaintiff emphasized. The release further required Mr. Rafko to execute "any and all supplementary documents and to take all supplementary steps to give full force and effect to the basic terms and intent of this agreement."

The Monroe Circuit Court agreed with Mr. Rafko, however, that nothing in the release documents in the automobile-negligence case required him to disclose his medical records in the Washtenaw Circuit Court case against the university defendants.

The Court of Appeals has affirmed the rulings in both the Washtenaw Circuit Court action against the university defendants,[3] and the Monroe Circuit Court breach-of-contract action against Mr. Rafko.[4]

The plaintiff has filed applications for leave to appeal in this Court from each decision. On our own

---

[3] Unpublished opinion per curiam, issued August 22, 1995 (Docket Nos. 163571, 163572).

[4] Unpublished opinion per curiam, issued November 7, 1995 (Docket No. 172077).

motion, we have consolidated the matters for resolution.

II

There is no physician-patient privilege at common law, but a majority of states have enacted statutes. The Michigan statute pertinent to this appeal is MCL 600.2157; MSA 27A.2157. It provides:

> Except as otherwise provided by law, a person duly authorized to practice medicine or surgery shall not disclose any information that the person has acquired in attending a patient in a professional character, if the information was necessary to enable the person to prescribe for the patient as a physician, or to do any act for the patient as a surgeon.

The purpose underlying the privilege is to protect the confidential nature of the physician-patient relationship, and to encourage patients to make full disclosure of their symptoms and conditions. *Domako* v *Rowe*, 438 Mich 347, 354; 475 NW2d 30 (1991).[5]

The statute contains what is commonly referred to as a patient-litigator exception. Under this provision, a waiver of the physician-patient privilege is presumed with respect to treating doctors, if the patient brings an action for personal injury or other malpractice and produces another treating physician as a witness. The exception does not apply to the instant

---

[5] The physician-patient privilege does not exclude evidence because it is unreliable or prejudicial. Rather, the privilege "encourages free disclosure in the sickroom by preventing disclosure in the courtroom." 1 McCormick, Evidence (4th ed), § 102, pp 380-381.

appeal because Mr. Rafko was not a plaintiff in any of the related lawsuits.[6]

In addition to the statutory privilege of MCL 600.2157; MSA 27A.2157, the Michigan Court Rules contain a number of discovery provisions that are relevant to this discussion. For instance, MCR 2.302(B) says that parties to an action may obtain discovery of any relevant matter that is not privileged. Under MCR 2.314(B)(1), a party who does not timely assert a privilege in a written response for documents under MCR 2.310 is held to have waived the privilege for purposes of the case at hand, although it "is not waived for the purposes of any other action." So, too, a party who does not assert the privilege at the deposition of a witness loses the privilege in that action under MCR 2.306(D)(4), with regard to that testimony.

III

In the Washtenaw Circuit Court action, the plaintiff argued that the settlement in the Monroe Circuit Court automobile-negligence case required Mr. Rafko to provide access to his medical records in the subsequent lawsuit against the university defendants. The plaintiff also argued that there was no confidential information left to protect anyway, because of the earlier disclosure in the automobile-negligence case

---

[6] The statute also contains provisions for the waiver of a deceased patient's privilege by a third person. In addition, the Legislature has decreed in other statutes that the privilege must yield in certain circumstances. See, e.g., § 11 of the Child Protection Law, MCL 722.631; MSA 25.248(11), and § 625a(9) of the implied consent statute, MCL 257.625a(9); MSA 9.2325(1)(9).

and in a second Monroe Circuit Court lawsuit.[7] The plaintiff further contended that summary disposition was inappropriate because he should have been given an opportunity to prove ordinary negligence through other evidence, e.g., both Mr. Rafko and Dr. Sackellares had been deposed in connection with the prior litigation, and an expert witness already had reviewed the medical records. The trial court was not persuaded.

The Court of Appeals agreed with the trial court. The Court said that the plaintiff had failed to produce sufficient evidence such as depositions or affidavits to create a genuine issue of material fact.[8] Moreover, although he argued that summary disposition should not have been granted before discovery closed, he failed to indicate how much time was left and to explain what additional discovery he would have pursued.[9]

---

[7] The plaintiff had sued Mr. Rafko's parents in the Monroe Circuit Court on the theory that they had assumed the responsibility to supervise their adult son in taking his medication. The defendants obtained summary disposition in November 1990, and the court denied the plaintiff's motion for reconsideration. The Court of Appeals affirmed in June 1993. Unpublished opinion per curiam, issued June 10, 1993 (Docket Nos. 135788, 137508).

[8] Under MCR 2.116(C)(10), summary disposition is appropriate when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." Under MCR 2.116(G)(4), a party opposing summary disposition under (C)(10) "may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial."

[9] The plaintiff relies heavily on Duvall v Goldin, 139 Mich App 342; 362 NW2d 275 (1984), which also involved allegations against a physician whose patient had suffered a seizure and been in an automobile accident. We note, however, that the allegations in Duvall against both the patient and the physician were included in the same lawsuit.

Regarding the plaintiff's argument that Mr. Rafko had waived his physician-patient privilege in the Washtenaw case, the Court of Appeals said that a waiver could not be implied from the express waiver in the automobile-negligence case, and that the plaintiff had not shown that it was probable he could obtain Mr. Rafko's waiver before the close of discovery. In addition, the Court said the plaintiff's argument that a privilege once waived cannot be reinstated overlooks this Court's pronouncement in *Domako, supra,* that a waiver is effective only in the action in which it is given.

IV

We agree with the plaintiff that the Court of Appeals erred in affirming the Washtenaw Circuit judge's grant of summary disposition to the university defendants. The rationale for the physician-patient privilege—to encourage patients to freely divulge symptoms and conditions without fear that the information will be disclosed in court and embarrass them—simply does not apply when a patient seeks to shield the information from the same persons to whom it earlier was disclosed.

In *Hamilton v Verdow,* 287 Md 544; 414 A2d 914 (1980), the Maryland Court of Appeals responded to a certified question from the United States District Court in Maryland in a diversity action. The question was whether the estate of a murdered boy could discover the killer's medical records, absent his express consent to disclosure. The records were in the possession of a state hospital, and a Maryland statute

provided that they were protected by a privilege simi-
lar to the one at the center of the instant case.[10]

In answering the question affirmatively, the *Hamil-
ton* court noted that the convicted man previously
had released his records in similar litigation brought
by the estate of another boy he had been found guilty
of murdering:

> The records [in the other case] are not only identical to
> the materials that are sought by the plaintiff in the present
> case, but *the plaintiff here is bringing a virtually identical
> tort suit and would be using the records for the same pur-
> pose. Moreover, [the convicted man] released the records
> without any express limitations on the use* or further dis-
> tribution of the records by [the other victim's estate].
>
> *                *                *
>
> [I]t is apparent that [the convicted man] *may not selec-
> tively waive his privilege relating to the medical informa-
> tion by arbitrarily picking and choosing among similarly
> situated parties, at least when it is the same information
> requested by each party and for the same purpose.* In order
> to permit a selective waiver, there should be some reasona-
> ble basis for distinguishing between two different situa-
> tions. In this case, however, there is no rational ground for
> distinguishing between [the convicted man's] waiver of his
> entire medical file to [the first victim's estate] when that
> information is identical to the information requested by the
> plaintiff. Both [the first victim's estate] and the plaintiff
> brought suits that are against substantially the same defend-
> ants and that are predicated on virtually identical facts and
> allegations. Both parties intended to use the information for
> the same purpose. Accordingly, *by expressly authorizing
> the [first] plaintiff to obtain the medical records, [the con-
> victed man]* has similarly waived his statutory privilege

---

[10] Michigan also has a statute that pertains specifically to medical
records in the possession of mental-health professionals. MCL 330.1750;
MSA 14.800(750).

with respect to discovery by the plaintiff in the present
action. [287 Md 552-553 (emphasis added).]

We believe that the reasoning in *Hamilton* is per-
suasive here. Indeed, the instant plaintiff's situation is
even stronger than the position of the plaintiff in
*Hamilton*. As noted earlier, both sides in the instant
case already have Mr. Rafko's medical records; there
is no suggestion in *Hamilton* that the information
was in the second plaintiff's possession. Further,
*Hamilton* involved two separate murders and two
separate plaintiffs, while the instant matter involves
one plaintiff and the same underlying event, i.e.,
Mr. Rafko losing control of his car and injuring
Joseph Landelius.

In addition, the record in the instant case indicates
that Mr. Rafko and Dr. Sackellares were deposed in
the automobile-negligence action in the Monroe Cir-
cuit Court, concerning Mr. Rafko's medical condition
and treatment. The plaintiff asserts, and the defend-
ants do not dispute, that Mr. Rafko did not object to
the use of his medical records either in that case or in
the lawsuit that the plaintiff brought against
Mr. Rafko's parents (see footnote 7).

Like the *Hamilton* court, we disapprove of a privi-
lege-holder "arbitrarily picking and choosing among
similarly situated parties, at least when it is the same
information requested by each party and for the same
purpose." Here, Mr. Rafko did not favor one plaintiff
over another—each lawsuit involved the same plain-
tiff. Rather, he favored one cause of action over
another. However, we can conceive of no more prin-
cipled reason to allow that selective waiver than the
selective waiver that the *Hamilton* court criticized.
As this Court observed on a previous occasion:

> A true waiver is an intentional, voluntary act and cannot arise by implication. It has been defined as the voluntary relinquishment of a known right.
>
> There are some circumstances, however, wherein justice requires that a person be treated *as though* he had waived a right where he has done some act inconsistent with the assertion of such right and without regard to whether he knew he possessed it. This is the doctrine of estoppel. [*Kelly* v *Allegan Circuit Judge*, 382 Mich 425, 427; 169 NW2d 916 (1969).]

We also note that the record in this case contains a copy of the one-year medical authorization signed by Mr. Rafko. It is not addressed to a specific individual, and does not refer to any particular lawsuit. Instead, it authorizes all caregivers, hospitals, and employers to "release" information "to be used in the evaluation of a pending legal suit." The authorization was notarized by one of the attorneys who has represented Mr. Rafko in these cases.

There is no indication that the medical records at issue were obtained by the plaintiff after January 7, 1992, the time in which the authorization was to expire by its own terms. The authorization does not proscribe the *use* of material after the one-year period. Rather, it only precludes medical personnel and employers from *disclosing* information after that date.[11]

V

The parties and the lower courts have also debated the significance of MCR 2.314(B)(1) in this situation.

---

[11] We agree with the Court of Appeals, however, that Mr. Rafko would be precluded from reasserting his privilege in the automobile-negligence case after one year, pursuant to *Domako* and *G P Enterprises, Inc* v *Jackson Nat'l Life Ins Co*, 202 Mich App 557; 509 NW2d 780 (1993).

.

As we mentioned earlier, that subrule says that a party who fails to timely assert a privilege has waived it for that action only, and not for subsequent actions. It is true that Mr. Rafko was a party to the automobile-negligence suit in the Monroe Circuit Court, and that he expressly waived his physician-patient privilege for one year. However, an express waiver is not the same as a failure to timely assert a privilege, and the reason for limiting a waiver in a default situation to that case does not pertain when a party freely and knowingly discloses medical information.

Even if MCR 2.314(B)(1) did apply in this situation, there is nothing in the rule that would prevent a party from waiving the physician-patient privilege in a subsequent action. As we explained above, we believe that an implied waiver of the privilege occurred in this case with regard to litigation arising from the same underlying event, i.e., the accident in which Mr. Rafko lost control of his car and injured Joseph Landelius. Having authorized the disclosure of his medical records in that case, and having given deposition testimony about his care and treatment, Mr. Rafko is estopped to recapture the physician-patient privilege in the Washtenaw Circuit Court case involving the university defendants.

VI

Because of our determination that the Washtenaw Circuit judge erred in granting summary disposition for the defendants, we need not consider further the plaintiff's appeal of the grant of summary disposition in the breach-of-contract action against Mr. Rafko in the Monroe Circuit Court. We thus deny the plaintiff's

application for leave to appeal in Supreme Court Docket No. 104946.

For the reasons given, in lieu of granting leave to appeal in Docket Nos. 104203, 104204, we reverse the judgments of the Court of Appeals and the Washtenaw Circuit Court, and we remand this matter to the Washtenaw Circuit Court for further proceedings consistent with this opinion. MCR 7.302(F)(1).

BRICKLEY, C.J., and CAVANAGH, RILEY, MALLETT, and WEAVER, JJ., concurred.

LEVIN, J. I would grant leave to appeal.

BOYLE, J. I would grant leave to appeal.