*Michigan Supreme Court*
*Lansing, Michigan 48909*

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JUNE 12, 2002**

NANCY KOONTZ,

    Plaintiff-Appellee,

v

No. 116366

AMERITECH SERVICES, INC.,

    Defendant-Appellant,

and

UNEMPLOYMENT AGENCY of the
MICHIGAN DEPARTMENT OF CONSUMER
AND INDUSTRY SERVICES, formerly
MICHIGAN EMPLOYMENT SECURITY
AGENCY,

    Appellee.

_____

BEFORE THE ENTIRE BENCH (except MARKMAN, J.).

CORRIGAN, C.J.

    This case requires that we interpret a statute directing coordination of unemployment benefits with pension benefits. Plaintiff received a lump-sum pension payment under an employer-funded retirement plan. When plaintiff sought unemployment compensation, the Unemployment Agency[1]

_____

[1] The Unemployment Agency was formerly known as the Michigan Employment Security Commission.

coordinated her weekly benefits with her prorated weekly amount of pension payments (i.e., the amount of pension benefits plaintiff would have received weekly had she not opted for a lump-sum payment). The ensuing reduction rendered plaintiff ineligible to receive any unemployment benefits. The Employment Security Board of Review and the circuit court upheld the reduction. The Court of Appeals reversed and held that coordination was not required.

We hold that the governing statute, MCL 421.27(f)(1), mandates coordination of plaintiff's unemployment benefits with her pension benefits. We therefore reverse the judgment of the Court of Appeals and reinstate the decision of the Board of Review and the judgment of the circuit court.

## I. Underlying Facts and Procedural History

Plaintiff began working for Ameritech in its Traverse City office in 1965. Thirty years later, Ameritech closed its Traverse City office and offered to continue plaintiff's employment in another office. She declined, electing instead to retire. Ameritech's retirement incentive program entitled plaintiff to a $1,052.95 monthly pension allowance, which Ameritech fully funded. In lieu of monthly payments, however, plaintiff elected to receive her pension in a lump-sum in the amount of $185,711.55. Plaintiff also chose to transfer the lump-sum directly into her individual retirement account (IRA).

Plaintiff then applied for unemployment compensation. Ameritech argued in response to plaintiff's application that MCL 421.27(f) of the Michigan Employment Security Act, MCL

2

421.1 *et seq.*, allowed coordination of plaintiff's unemployment benefits with the amount of pension payments plaintiff would have received if she had elected the monthly payment option. The Unemployment Agency agreed and directed coordination under MCL 421.27(f). This coordination resulted in a reduction in plaintiff's unemployment benefits in the amount of $243 weekly, rendering her ineligible to receive any unemployment benefits.[2] Plaintiff timely protested this determination, but the Unemployment Agency upheld its decision on redetermination.

Plaintiff thereafter appealed the redetermination. A referee reversed the decision of the Unemployment Agency on the ground that neither MCL 421.27(f)(1) nor (5) required coordination since plaintiff had transferred the pension funds directly into her IRA and thus had not "received" the funds within the meaning of the act. The referee relied on the Unemployment Agency's Revised Benefit Interpretation No. 20.641, which indicates that an employee who rolls a pension amount over into an IRA does not incur immediate income tax liability because the Internal Revenue Service does not consider the payment "received" for income tax purposes.

Ameritech appealed the referee's decision to the Michigan Employment Security Board of Review, which reinstated the Unemployment Agency's determination in a split decision. The Board of Review ruled that the taxability of plaintiff's

---

[2] Because plaintiff's pro-rata retirement benefits would have been equal to or greater than her weekly unemployment benefits, she was not eligible to receive unemployment benefits chargeable to Ameritech. See MCL 421.27(f)(1)(a).

3

pension benefit did not affect the operation of MCL 421.27(f) and that the lump-sum distribution was a "retirement benefit" under the plain language of the act. Accordingly, the board concluded that coordination was required under MCL 421.27(f)(1)(a).

One member of the Board of Review dissented, finding that plaintiff did not receive a retirement benefit because the lump-sum distribution had been rolled over into an IRA. The dissenting member relied on Revised Benefit Interpretation No. 20.641 and the United States Department of Labor's (USDOL) Unemployment Insurance Program Letter No. 22-97. The USDOL Letter No. 22-97 stated that pension amounts rolled over into an IRA within sixty days of receipt are not gross income for purposes of federal income taxation and thus are not "received" for purposes of 26 USC 3304(a)(15)(A) of the Federal Unemployment Tax Act (FUTA), 26 USC 3301 *et seq*.[3] The dissenting member concluded that MCL 421.27(f) did not require coordination of plaintiff's weekly benefit amount.

The circuit court affirmed the Board of Review's decision. The Court of Appeals then granted leave to appeal[4] and reversed the circuit court order. 239 Mich App 34; 607 NW2d 395 (1999). It held that another subsection, MCL 421.27(f)(5), governed and did not require coordination of benefits. Alternatively, the court stated in dictum that even

_____

[3] The Unemployment Agency issued Revised Benefit Interpretation No. 20.641 on November 29, 1995, in an apparent attempt to comply with USDOL Letter No. 22-87.

[4] Unpublished order, entered July 7, 1998 (Docket No. 208176).

if MCL 421.27(f)(1) applied, coordination was not required because 1) plaintiff had not received a "retirement benefit" within the meaning of MCL 421.27(f)(4), and 2) the phrase "receive or will receive" in MCL 421.27(f)(1) does not include the direct rollover of a pension fund to an IRA.

## II. Standard of Review

This case requires us to ascertain the meaning and proper application of MCL 421.27. Issues of statutory interpretation are questions of law that we review de novo. *Oade v Jackson Nat'l Life Ins Co*, 465 Mich 244, 250; 632 NW2d 126 (2001); *Donajkowski v Alpena Power Co*, 460 Mich 243, 248; 596 NW2d 574 (1999).

## III. Relevant Statutes

MCL 421.27(f)(1) has existed in essentially the same form since 1954 PA 197. It states:

> [N]otwithstanding any inconsistent provisions of this act, the weekly benefit rate of each individual who is receiving or will receive a "retirement benefit," as defined in [MCL 421.27(f)(4)], shall be adjusted as provided in subparagraphs (a) . . . . However, an individual's extended benefit account and an individual's weekly extended benefit rate under [MCL 421.64] shall be established without reduction under this subsection unless [MCL 421.27(f)(5)] is in effect . . . .

> (a) If and to the extent that unemployment benefits payable under this act would be chargeable to an employer who has contributed to the financing of a retirement plan under which the claimant is receiving or will receive a retirement benefit yielding a pro rata weekly amount equal to or larger than the claimant's weekly benefit rate as otherwise established under this act, the claimant shall not receive unemployment benefits that would be chargeable to the employer under this act.

MCL 421.27(f)(1) thus requires an offset in unemployment compensation for retirement benefits if the employer charged

5

with unemployment benefits funded the retirement plan. This type of reduction is known as "narrow coordination."

Before 1980, federal law did not address coordination of unemployment and retirement benefits. In March 1980, Congress amended 26 USC 3304(a)(15) of the FUTA to require the coordination of unemployment benefits with employer-funded retirement benefits, regardless of whether the employer who had funded the retirement benefits was the same employer whose account would be charged for the unemployment benefits. This type of coordination is known as "broad coordination." Section 3304, particularly subsection (a)(15), of the FUTA requires the states to conform to federal policy regarding coordination of unemployment benefits to insure eligibility for federal funds or tax credits. See *Gormley v General Motors Corp*, 125 Mich App 781, 785-786; 336 NW2d 873 (1983). In response to the federal amendment, the Michigan Legislature promptly adopted broad coordination to the extent required by federal law. MCL 421.27(f)(5) states:

> Notwithstanding any other provision of this subsection, for any week that begins after March 31, 1980, and with respect to which an individual is receiving a governmental or other pension and claiming unemployment compensation, the weekly benefit amount payable to the individual for those weeks shall be reduced, but not below zero, by the entire prorated weekly amount of any governmental or other pension, retirement or retired pay, annuity, or any other similar payment that is based on any previous work of the individual. This reduction shall be made only if it is required as a condition for full tax credit against the tax imposed by the federal unemployment tax act, chapter 23 of subtitle C of the internal revenue code of 1986, 26 USC 3301 to 3311.

The federal mandate for broad coordination was short-lived. In September 1980, Congress amended 26 USC 3304(a)(15)

6

to its present form, which requires only narrow coordination, i.e., that coordination specified in MCL 421.27(f)(1). Despite the federal amendment, the Michigan Legislature has never amended MCL 421.27(f)(5). MCL 421.27 thus retains both broad and narrow coordination provisions. We now address the interplay of those provisions.

IV. Principles of Statutory Interpretation

When interpreting statutory language, our obligation is to ascertain the legislative intent that may reasonably be inferred from the words expressed in the statute. *Wickens v Oakwood Healthcare System*, 465 Mich 53, 60; 631 NW2d 686 (2001). When the Legislature has unambiguously conveyed its intent in a statute, the statute speaks for itself, and judicial construction is not permitted. *Huggett v Dep't of Natural Resources*, 464 Mich 711, 717; 629 NW2d 915 (2001); *Donajkowski, supra* at 248. Because the proper role of the judiciary is to interpret and not write the law, courts simply lack authority to venture beyond the unambiguous text of a statute.

Courts must give effect to every word, phrase, and clause in a statute, and must avoid an interpretation that would render any part of the statute surplusage or nugatory. *Wickens, supra at* 60. Further, we give undefined statutory terms their plain and ordinary meanings. *Donajkowski, supra* at 248-249; *Oakland Co Road Comm'rs v Michigan Property & Casualty Guaranty Ass'n*, 456 Mich 590, 604; 575 NW2d 751 (1998). In those situations, we may consult dictionary definitions. *Id.*

7

V. Analysis

A. Interpretation of MCL 421.27(f)

The Court of Appeals determined that MCL 421.27(f)(5) controlled over MCL 421.27(f)(1):

> We conclude that subdivision 27(f)(5) is controlling with regard to the coordination of plaintiff's retirement benefits. Its purpose was to conform with the federal government's goal of maintaining certain uniformity among the state programs regarding the coordination requirements for unemployment compensation, which purpose would be defeated were Michigan to default to its own interpretations for coordination under its previous statutory provisions and, in this case, circumvent the clear result under subdivision 27(f)(5) that coordination of plaintiff's benefits is not required.
>
> Moreover, the express statutory language mandates a conclusion that subdivision 27(f)(5) controls over subdivision 27(f)(1). Subdivision f(5) was enacted after f(1) and provides: "Notwithstanding any other provision of this *subsection* . . . ." [Emphasis in original.] To apply subdivision 27(f)(1) independently of subdivision 27(f)(5) and deny plaintiff unemployment benefits is inconsistent with the result under federal law. Such an interpretation also creates an inconsistency within the statute, contrary to the rules of statutory construction. In construing statutes, seeming inconsistencies in the various provisions should be reconciled if possible. [Citation omitted.]

Accordingly, the Court of Appeals held that MCL 421.27(f)(5) exempted plaintiff's benefits from coordination.

The Court of Appeals failed to give effect to every word and phrase of MCL 421.27(f). While the court acknowledged the phrase, "Notwithstanding any other provision of this subsection" in MCL 421.27(f)(5), it failed to give effect to similar language in MCL 421.27(f)(1), stating, "notwithstanding any inconsistent provisions of this act." In addition, in finding that MCL 421.27(f)(5) controls over MCL

8

421.27(f)(1), the Court rendered nugatory MCL 421.27(f)(1), contrary to established rules of interpretation.

We believe that the language of MCL 421.27(f) is clear and unambiguous and must therefore be enforced as written. *Huggett, supra* at 717; *Donajkowski, supra* at 248. MCL 421.27(f)(1) provides, in pertinent part:

> [N]otwithstanding any inconsistent provisions of this act, the weekly benefit rate of each individual who is receiving or will receive a "retirement benefit," as defined in [MCL 421.27(f)(4)], shall be adjusted as provided in subparagraph (a) . . . .

> (a) If and to the extent that unemployment benefits payable under this act would be chargeable to an employer who has contributed to the financing of a retirement plan under which the claimant is receiving or will receive a retirement benefit yielding a pro rata weekly amount equal to or larger than the claimant's weekly benefit rate as otherwise established under this act, the claimant *shall not* receive unemployment benefits that would be chargeable to the employer under this act. [Emphasis added.]

This text requires coordination where the claimant's unemployment benefits are chargeable to the employer who contributed to the financing of the claimant's retirement benefits. Thus, "narrow coordination" is required "notwithstanding any inconsistent provisions of this act . . . ."

MCL 421.27(f)(5), on the other hand, requires "broad coordination" where necessary to conform to federal law:

> Notwithstanding any other provision of this subsection, for any week that begins after March 31, 1980, and with respect to which an individual is receiving a governmental or other pension and claiming unemployment compensation, the weekly benefit amount payable to the individual for those weeks shall be reduced, but not below zero, by the entire prorated weekly amount of any governmental or other pension, retirement or retired pay, annuity,

9

> or any other similar payment that is based on any previous work of the individual. *This reduction shall be made only if it is required as a condition for full tax credit against the tax imposed by the federal unemployment tax act, chapter 23 of subtitle C of the internal revenue code of 1986, 26 USC 3301 to 3311.* [Emphasis added.]

This provision broadens the coordination required in MCL 421.27(f)(1) by compelling a reduction *not only* with regard to pension funds that the chargeable employer contributes, but *also* with regard to pension funds "based on *any* previous work," regardless of whether the chargeable employer contributed the funds. MCL 421.27(f)(5) requires such "broad coordination" only when necessary to conform to federal law.

Thus, contrary to the Court of Appeals analysis, MCL 421.27(f)(1) and (5) are not inconsistent, but can be harmonized. While MCL 421.27(f)(1) *always* requires coordination of pension benefits that the chargeable employer contributed, MCL 421.27(f)(5) may *also* require coordination of pension benefits on the basis of the claimant's previous work *if* such broad coordination is necessary to conform to federal law.

Our application of the plain language of these provisions does not render MCL 421.27(f)(5) nugatory. If Congress again chooses to require broad coordination, the additional reduction prescribed in subsection 27(f)(5) will be triggered. That federal law does not presently require the reduction does not render MCL 421.27(f)(5) nugatory and does not compel the Michigan Legislature to amend the statute.

B. The Meaning of "Liquidation"

Because MCL 421.27(f)(5) does not apply here,[5] the question remains whether MCL 421.27(f)(1) required coordination of plaintiff's benefits. The Court of Appeals stated in dictum that even if MCL 421.27(f)(1) governed, it did not require an offset because plaintiff did not receive a "retirement benefit" within the meaning of MCL 421.27(f)(4)(a). That subdivision provides:

> (4)(a) As used in this subdivision, "retirement benefit" mean a benefit, annuity, or pension *of any type* . . . that is:
>
> (*i*) Provided as an incident of employment under an established retirement plan, policy, or agreement, including federal social security if subdivision (5) is in effect.
>
> (*ii*) Payable to an individual because the individual has qualified on the basis of attained age, length of service, or disability, whether or not the individual retired or was retired from employment. *Amounts paid to individuals in the course of liquidation of a private pension or retirement fund because of termination of the business or of a plant or department of the business of the employer involved shall not be considered to be retirement benefits.* [Emphasis added.]

The Court of Appeals determined that plaintiff's pension was not a retirement benefit within the meaning of MCL 421.27(f)(4)(a) because the fund was liquidated upon plaintiff's termination when Ameritech closed its Traverse City office. This factual conclusion was erroneous.

Although the Ameritech Traverse City office was closed,

---

[5] Even if MCL 421.27(f)(5) applied, it would not change the result. Plaintiff did not receive extended benefits, but, rather, Ameritech contributed to all the pension benefits paid to plaintiff. Plaintiff did not receive benefits from any employer other than Ameritech, the chargeable employer. Thus, even if federal law mandated broad coordination under MCL 421.27(f)(5), the facts of this case implicated only the narrow coordination *already* required by MCL 421.27(f)(1).

the record does not reflect that the pension fund was liquidated. *Random House Webster's College Dictionary* (2000) defines "liquidate" as "to settle or pay (a debt)," "to reduce (accounts) to order," "to dissolve (a business or estate) by apportioning the assets to offset the liabilities," "to convert (inventory, securities, or other assets) into cash," "to get rid of, esp. by killing," "to break up or do away with," and "to liquidate debts or accounts." The more pertinent of these definitions contemplate the elimination of an entire entity or the abolition of all assets or accounts within an entity. As such, liquidation would involve the Ameritech pension fund distributing all its assets. The distribution of a single employee's vested interest is not a liquidation of the pension fund. In addition, plaintiff could have elected to accept her pension benefits as a monthly annuity, which clearly refutes the Court of Appeals conclusion that the fund had been liquidated.

Our dissenting colleague maintains that we misconstrue the meaning of MCL 421.27(f)(4)(a) by failing to consider the entire sentence in which "liquidation" appears. She attempts to generate an ambiguity in the phrase "liquidation of a private pension or retirement fund" by asserting that the phrase could refer either to an individual's personal account or fund *or* to the collective pension fund. We reject the dissent's view.

The meaning of the phrase in MCL 421.27(f)(4)(a)(ii) hinges on the word "liquidation." As discussed, the plain meaning of that term requires distribution of all assets held

12

in the pension fund for all employees. The dissent contends that the term "liquidate" has many definitions, some of which may be interpreted to apply to a sole pension account, such as that belonging to plaintiff. A word is not rendered ambiguous, however, merely because a dictionary defines it in a variety of ways. *Upjohn Co v New Hampshire Ins Co*, 438 Mich 197, 208-209, n 8; 476 NW2d 392 (1991). Rather, the doctrine of *noscitur a sociis* requires that the term "liquidation" be viewed in light of the words surrounding it. *Herald Co v Bay City*, 463 Mich 111, 130, n 10; 614 NW2d 873 (2000). "Contextual understanding of statutes is generally grounded in the doctrine of *noscitur a sociis*: '[i]t is known from its associates,' see Black's Law Dictionary (6th ed), p 1060. This doctrine stands for the principle that a word or phrase is given meaning by its context or setting." *Brown v Genesee Co Bd of Comm'rs (After Remand)*, 464 Mich 430, 437; 628 NW2d 471 (2001), quoting *Tyler v Livonia Schs*, 459 Mich 382, 390-391; 590 NW2d 560 (1999).

In the context of the statute, the term "liquidation" pertains to multiple accounts rather than to an individual account. The statute exempts from the category of "retirement benefits" those amounts "paid to individuals in the course of liquidation of a private pension or retirement fund." Therefore, the text contemplates that liquidation pertains to multiple accounts and not merely the single account of an individual pensioner. In addition, the liquidation must occur because of "termination of the business or of a plant or department of the business." Such a termination would involve

13

all employees within the business, plant, or department, and not merely a single employee. Therefore, in accordance with the doctrine of *noscitur a sociis,* the phrase "liquidation of a private pension or retirement fund" is not ambiguous; the language clearly refers to the distribution of all assets within the fund. Moreover, the dissent does not explain how the fund was liquidated where, as discussed above, plaintiff could have chosen to collect her pension benefits as a monthly annuity.

Further, the dissent asserts that MCL 421.27(f)(4)(a) is a remedial statute that we should construe liberally in favor of plaintiff. We do not apply preferential rules of statutory interpretation, however, without first discovering an ambiguity and attempting to discern the legislative intent underlying the ambiguous words. *Crowe v Detroit*, 465 Mich 1, 13; 631 NW2d 293 (2001). Only if that inquiry is fruitless, or produces no clear demonstration of intent, do we resort to a preferential or "dice-loading" rule.[6] Because no ambiguity exists, the remedial rule of preference does not apply. *Id.*

The dissent also asserts that our interpretation of the statute produces "unconscionable results." It is not the role of the judiciary, however, to second-guess the wisdom of a legislative policy choice. Our constitutional obligation is to interpret, not to rewrite, the law. The Legislature apparently determined that the same result should obtain regardless of whether an employee opts for a monthly annuity

---

[6] See also Scalia, *A Matter of Interpretation: Federal Courts and the Law* (Princeton, NJ, 1997) pp 27-29.

14

or for a lump-sum payment. Here, if plaintiff had elected a monthly annuity in lieu of the lump-sum payment, no question would exist that she would have been ineligible to receive unemployment benefits.

Moreover, plaintiff chose to accept her pension benefits instead of relocating to another Ameritech office. Ameritech had offered plaintiff the opportunity to continue her employment in another location, but she declined to do so. The payout followed plaintiff's decision to retire rather than relocate. While the dissent contends that plaintiff had no choice but to accept her pension benefits, the record does not support this assertion. Accordingly, the condition set forth in MCL 421.27(f)(4)(ii), providing an exception to the term "retirement benefit," does not apply in this case.

Thus, whether Ameritech's payment to plaintiff was a "retirement benefit" depends on whether it was "a benefit, annuity, or pension of any type" payable to her "because [she] has qualified on the basis of attained age [or] length of service . . . ." In defining a "retirement benefit," the Legislature has used words of common and ordinary meaning, and we apply them accordingly. *Donajkowski, supra* at 248-249; *Oakland Co Rd Comm'rs, supra* at 604. It is undisputed that plaintiff received a pension benefit on the basis of her age and years of service. Thus, she received a "retirement benefit" as contemplated in MCL 421.27(f)(4)(a).

C. The Meaning of "Receive or Will Receive"

The Court of Appeals also stated, in dictum, that even if plaintiff's distribution were a retirement benefit, it was

15

exempt from coordination because "the Legislature did not intend the terms 'receive or will receive' under § 27(f)(1) to include the direct rollover of a pension fund to an IRA . . . ." The Court stated:

> This construction of the statute is the most reasonable and comports with the benefit interpretations of both the UA and the USDOL. MESC Revised Benefit Interpretation No. 20.641 (November 29, 1995); USDOL Unemployment Insurance Program Letter No. 22-87, Change 1 (June 19, 1995). In reaching our conclusion, we are mindful that the role of the judiciary is not to engage in judicial legislation, but rather to determine the way chosen by the Legislature. [Citation omitted.] We decline to interpret the statute to incorporate any change that overrides requirements clearly adopted by the Legislature. [239 Mich App 47.]

While this issue is one of first impression in the context of unemployment compensation, it has been addressed in the somewhat analogous context of worker's compensation. *White v McLouth Steel Products*, decided sub nom *Corbett v Plymouth Twp*, 453 Mich 522; 556 NW2d 478 (1996).[7] In *White,* this Court construed MCL 418.354(1)(d), of the Worker's Disability Compensation Act, MCL 418.101 *et seq*., which directs that worker's compensation benefits be coordinated with "[t]he after-tax amount of the pension or retirement payments received or being received . . . ." The employee in *White* rolled his lump-sum pension distribution into an IRA. The question was whether the nontaxable nature of the rollover transfer precluded coordination of the retirement payments with the worker's compensation benefits. This Court ruled in

---

[7] See, generally, *Drouillard v Stroh Brewery Co*, 449 Mich 293, 304-305; 536 NW2d 530 (1995) (holding that the employer could coordinate a lump-sum pension distribution with worker's compensation benefits where the employee had been "forced" to accept the pension distribution).

favor of the employee.  It rejected as "literalism" the employer's contention that the employee "received" the transferred amount.  This Court also stated that its interpretation was consistent with the language of MCL 418.354(1)(d), limiting coordination to the *after-tax* amount of the pension:

> By reason of the tax-free aspect of a rollover into an IRA, there is no taxable event and, hence, no tax or "after-tax amount" that is "received or being received."  [*Id*. at 547.]

Three justices dissented in *White*.  They opined:

> The [majority] opinion dismisses the statute's language by labeling as "literalism" defendant McLouth Steel Products' argument that under the statute White has received his pension payment. *Ante* at 544.  [T]he better phrase would be *plain meaning*.  Subsection 354(1)(d) provides that weekly worker's compensation benefits may be reduced by the "after-tax amount of the pension or retirement payments *received*" by the employee and does not condition the coordination of pension benefits on whether the employee actually begins to use these funds or invests them in a plan in which he will only later receive payments. . . .
>
> The majority attempts to justify its interpretation . . . by noting the statute's use of the "*after-tax* amount," but fails to note that [MCL 418.354(13)] defines "after-tax amount" as the amount remaining after subtracting the *estimated tax* the employee would pay on the benefit, not the actual tax the employee incurred . . . .  [*Id*. at 562-563 (emphasis in original).[8]

MCL 421.27(f)(1) is the unemployment compensation counterpart of MCL 418.354(1)(d), but it lacks the "after-tax amount" language on which the *White* majority relied in part. The question here is whether plaintiff "received" the

---

[8] More precisely, MCL 418.354(13) defines "after-tax amount" as the gross amount remaining after subtracting the amount "*which would have been paid*, if any, under . . . state income tax and federal income tax . . . ." [Emphasis added.]

17

transferred amounts. *Random House Webster's College Dictionary* (2000) defines "receive" as "to take into one's possession," "to have (something) bestowed, conferred, etc.," "to hold, bear, or contain," and "to take, get, accept, or meet with something." In light of these definitions, we conclude that plaintiff received her retirement benefits within the meaning of MCL 421.27(f)(1), notwithstanding the fact that Ameritech transferred the funds directly into her IRA. We disagree with our dissenting colleague that plaintiff did not take the pension funds into her possession within the meaning of the dictionary definition of "receive." The funds were transferred at plaintiff's direction. She is able to withdraw the funds at any time and use them as she sees fit. Ameritech clearly conferred the funds upon plaintiff, and plaintiff accepted those funds by directing them into an account of her choice. Accordingly, it is inescapable that plaintiff received the funds. Because the dissenting opinion in *White* is better reasoned, following that approach, we conclude that plaintiff "received" the distribution at issue within the meaning of MCL 421.27(f)(1).[9]

---

[9] We overrule *White* to the extent that it is inconsistent with our present holding. The *White* majority also relied in part on the statutory language "after-tax amount" in MCL 418.354(1)(d) in support of its decision. We do not decide whether that aspect of *White* was decided correctly because it is irrelevant to our determination in this case.

Our concurring colleague asserts that overruling *White* in part is unnecessary because, unlike the statute in *White*, the statute before us does not contain the "after-tax amount" language. He fails to acknowledge, however, that in addition to the "after-tax amount" language, the *White* majority relied in part on an erroneous definition of "receive," conditioned on the taxable nature of the funds in question. The concurring opinion, therefore, overlooks part of the reasoning

18

Like, the Court of Appeals, the dissent would erroneously elevate a construction from an extratextual source above the unambiguous language of the statute itself. As we have stated repeatedly, courts may not look beyond the clear text of a statute to discover an unexpressed legislative intent. *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999). Although this Court generally accords due deference to an administrative agency charged with executing a particular statute, we grant no deference here because the plain meaning of the statute controls. "An agency interpretation cannot overcome the plain meaning of a statute." *Consumers Power Co v Public Service Comm*, 460 Mich 148, 157, n 8; 596 NW2d 126 (1999). The plain and ordinary meaning of "receive" provides no basis to differentiate between funds that are taxable and those that are not. Therefore, MCL 421.27(f)(1) requires coordination whether or not the funds are subject to taxation when plaintiff received them by directing their deposit into her IRA account.

VI. Conclusion

We conclude that MCL 421.27(f)(1) required coordination of plaintiff's unemployment benefits with her pension benefits. Plaintiff received a "retirement benefit" within the meaning of MCL 421.27(f)(1). That subsection required coordination, whether or not the funds were subject to taxation at the time of their receipt. Accordingly, we reverse the judgment of the Court of Appeals and reinstate the decision of the Board of Review and the judgment of the

upon which the majority in *White* based its decision.

circuit court.

WEAVER, TAYLOR, and YOUNG, JJ., concurred with CORRIGAN, C.J.

S T A T E   O F   M I C H I G A N

SUPREME COURT


NANCY KOONTZ,

    Plaintiff-Appellee,

v                                   No. 116366

AMERITECH SERVICES, INC.,

    Defendant-Appellant,

and

UNEMPLOYMENT AGENCY of the
MICHIGAN DEPARTMENT OF CONSUMER
AND INDUSTRY SERVICES, formerly
MICHIGAN EMPLOYMENT SECURITY
AGENCY,

    Appellee.
_____

CAVANAGH, J. (*concurring*).

I concur with the result in this case that MCL 421.27(f)(1) required coordination of plaintiff's unemployment benefits with her pension benefits. However, I write separately because in reaching this result, it is not necessary for the majority to adopt the dissent's approach from *White v McLouth Steel Products*, decided sub nom *Corbett v Plymouth Twp*, 453 Mich 522; 556 NW2d 478 (1996), and to overrule *White* to the extent that it is inconsistent with today's holding. In *White*, this Court construed MCL 418.354(1)(d) of the Worker's Disability Compensation Act

(WDCA), which provided that worker's compensation benefits be coordinated with "[t]he *after-tax* amount of the pension or retirement payments received or being received . . . ." (Emphasis added.) The *White* Court stated:

> The construction that we adopt is consistent with the language of the statute, which provides for an offset "of the *after-tax* amount of the pension or retirement payments received or being received by the employee . . . ." (Emphasis added.) By reason of the tax-free aspect of a rollover into an IRA, there is no taxable event and, hence, no tax or "after-tax amount" that is "received or being received." [*White, supra* at 547.]

The instant case involves an unemployment benefits statute that is similar to the worker's compensation statute in *White*, but does not contain the "after-tax" language. Although the remaining language in these statutes is similar, it is not identical. The two statutes are clearly different; they contain materially different language and arguably serve different purposes.

Because of the differences between these statutes, the majority does not need to address *White*. The *White* Court clearly stated that its holding was based on the "after-tax" language in the WDCA statute it was construing.

2

# S T A T E   O F   M I C H I G A N

## SUPREME COURT

NANCY KOONTZ,

    Plaintiff-Appellee,

v                                                                      No. 116366

AMERITECH SERVICES, INC.,

    Defendant-Appellant,

and

UNEMPLOYMENT AGENCY of the
MICHIGAN DEPARTMENT OF CONSUMER
AND INDUSTRY SERVICES, formerly
MICHIGAN EMPLOYMENT SECURITY
AGENCY,

      Appellee.

_____

KELLY, J. (*dissenting*).

    I respectfully disagree with the majority's conclusion that plaintiff's unemployment compensation benefits should be eliminated because she has received retirement benefits as defined by the Michigan Employment Security Act (MESA).  MCL 421.1 *et seq*.  The majority reads the relevant statutory language as unambiguous, despite strong indications to the contrary.  It fails to consider the entirety of the sentence in which the word "liquidation" appears and disregards interpretive letters that define "receive."  In so doing, the

majority misconstrues the meaning of MCL 421.27(f)(4)(a).

The Court of Appeals advanced the correct interpretation. I would affirm its holding that plaintiff did not receive a "retirement benefit" within the meaning of the act and that her unemployment compensation benefits should not be eliminated as a consequence.

## I.   STATUTORY CONSTRUCTION

When construing a statute, our primary goal is to ascertain and give effect to the intent of the Legislature in writing it. *Turner v Auto Club Ins Ass'n,* 448 Mich 22, 27; 528 NW2d 681 (1995). While judicial interpretation usually is not permitted where statutory language is clear, a literal construction must yield when it produces absurd and unjust results. See *Salas v Clements,* 399 Mich 103, 109; 247 NW2d 889 (1976). Judicial interpretation is also appropriate when reasonable minds can differ regarding the meaning of the language. *Adrian Sch Dist v Michigan Pub Sch Emp Retirement System*, 458 Mich 326, 332; 582 NW2d 767 (1998). If judicial interpretation is necessary, legislative intent is determined by giving the statutory language a construction that is both reasonable and that best accomplishes the purpose of the statute. *Frankenmuth Mut Ins Co v Marlette Homes, Inc*, 456 Mich 511, 515; 573 NW2d 611 (1998).

## A.   THE TERM "LIQUIDATION"

The MESA allows unemployment benefits payable under it to be reduced or eliminated where a claimant is receiving a "retirement benefit." MCL 421.27(f)(1). It defines that term as "a benefit, annuity, or pension of any type . . . payable

[when] . . . the individual was retired from employment." MCL 421.27(f)(4)(a)(ii). But the act expressly excludes as a retirement benefit any amounts paid to individuals "in the course of liquidation of a private pension or retirement fund because of termination of the business or of a plant or department of the business of the employer involved . . . ." *Id.*[1]

In this case, plaintiff lost her job with defendant because defendant closed the facility where she worked. The question is whether her retirement funds fall within the statutory definition of "retirement benefit" or within the exception.

The expression "liquidation of a private pension or retirement fund" in § 27(f)(4)(a)(ii) could mean a distribution of all pension monies that an employer holds for

---

[1] MCL 421.27(f)(4)(a) provides:

As used in this subdivision, "retirement benefit" means a benefit, annuity, or pension of any type or that part thereof that is described in subparagraph (b) that is:

(i) Provided as an incident of employment under an established retirement plan, policy, or agreement, including federal social security if subdivision (5) is in effect.

(ii) Payable to an individual because the individual has qualified on the basis of attained age, length of service, or disability, whether or not the individual retired or was retired from employment. Amounts paid to individuals in the course of liquidation of a private pension or retirement fund because of termination of the business or of a plant or department of the business of the employer involved shall not be considered to be retirement benefits.

3

all its employees.  Defendant here maintains that it did not liquidate its entire pension fund monies when it closed the facility where plaintiff worked and that the fund continues to exist.  Under this interpretation and in this factual situation, plaintiff's pension distribution would constitute retirement benefits and she could not be paid unemployment benefits.

On the other hand, the clause "liquidation of a private pension or retirement fund" could mean a distribution of all pension monies that an employer holds for one or more but not all of its employees.[2]  As noted by the majority, the word "liquidate" has many definitions, including "to settle or pay (a debt)" and "to convert (inventory, securities, or other assets) into cash."[3]  Applying that definition here, defendant "liquidated" plaintiff's retirement fund when it distributed the entire contents and closed the account, settling its debt to plaintiff and converting her pension into cash.  Hence, the distribution would not constitute retirement benefits and plaintiff could draw unemployment benefits.

The majority offers no persuasive reasoning to support its conclusion that the "more pertinent" definition of "liquidate" is that contemplating the elimination of all corporate pension assets.  The mere fact that it prefers this

---

[2] It is not clear from the record whether defendant distributed retirement funds to all employees in the facility that it closed.  It is known that five other employees were affected in the same way as plaintiff.

[3] See *Random House Webster's College Dictionary* (2001).

4

to a definition more favorable to plaintiff has no bearing on what the Legislature intended "liquidate" to mean. The varied definitions of the word leave room for reasonable minds to differ. It is inescapable that the statutory language is ambiguous.

The majority's interpretation, that "liquidation" means a distribution of all pension monies held for all its employees, produces unconscionable results. For example, in this case, Ameritech would never "liquidate" all its pension fund monies by shutting down one or some of its facilities. Hence, no employee in plaintiff's situation could ever collect unemployment benefits. As an extreme example, if defendant discharged all its employees, it could distribute all but one dollar of the funds in the pension fund. Then, the fund would not have been liquidated under the majority's reading because all the assets would not have been distributed. In so doing, defendant could reduce or eliminate all its employees' unemployment benefits. The Legislature could not have intended the result in either example.

The practical implications of the majority's reading of § 27(f)(4)(a)(ii) are enormously detrimental to employees like plaintiff. During plaintiff's hearing before the Michigan Employment Security Board of Review, defendant's human resources manager testified that there is a single common trust fund for pension monies to which both defendant and Michigan Bell contribute. Absent closure of the entire corporation and all its pension funds, whenever defendant shuts down one facility, it will always escape paying

5

unemployment benefits to the employees who worked there.

The majority distorts the facts of this case by portraying plaintiff's acceptance of her pension funds as a choice. Defendant offered plaintiff two other jobs in its corporation. However, both were located approximately two hours from her residence. When plaintiff declined them because the commute would be unreasonable, defendant distributed her retirement funds. She did not have the option to leave them in defendant's trust fund. She was obliged to have them rolled into an IRA or paid to her in a monthly annuity.[4] It is in light of these facts that defendant believes the funds were not liquidated within the meaning of MCL 421.27(f)(4)(a)(ii).

My construction of § 27(f)(4)(a)(ii) is in keeping with the fact that the MESA is a remedial statute. As such, by principle, it should be liberally construed to afford benefits to a displaced employee. *Empire Iron Mining Partnership v Orhanen,* 455 Mich 410, 415-416; 565 NW2d 844 (1997). My construction also furthers the purpose of the act, which is "to lighten the burden of economic insecurity on those who become unemployed through no fault of their own." *Id.* at 417.

B. THE PHRASE "IS RECEIVING OR WILL RECEIVE"

I also disagree with the majority's rejection of the Court of Appeals finding that, within the meaning of MCL

---

[4] Defendant did not at any point during the trial and appellate proceeding contest this. Accordingly, there is no reason for this Court to question the accuracy of plaintiff's assertion that she was required to see her retirement funds distributed. The record supports the claim.

6

421.27(f)(1), the funds were not "received."  Once again, the majority brushes aside reasonable interpretations other than its own and characterizes a word as unambiguous.

The facts of this case show that plaintiff did not take the pension funds into her possession within the dictionary definition of "receive."  Instead, defendant transferred the funds directly into an individual retirement account in her name.

The Court of Appeals decision interpreted "receive" by relying in part on interpretive letters issued by the United States Department of Labor (USDOL)[5] and the Michigan Employment Security Commission.[6]  Both conclude that, when an employer transfers an employee's retirement funds into an individual retirement account, the employee does not receive them for purposes of the relevant unemployment compensation laws.

The majority ignores these letters, choosing instead to construct a definition of "receive" on the basis of a dissenting opinion[7] and dictionary definitions.  However, it is a long-established principle of law that "'[t]he

---

[5] USDOL Unemployment Insurance Program Letter No. 22-87, Change 1 (June 19, 1995).

[6] Michigan Employment Security Commission Revised Benefit Interpretation No. 20.641 (November 29, 1995).

[7] The majority adopts the reasoning from the dissenting opinion in *White v McLouth Steel Products*, decided sub nom *Corbett v Plymouth Twp*, 453 Mich 522; 556 NW2d 478 (1996).  In so doing, it reverses that part of *White* that is inconsistent with its holding.  There is no reason to reach *White*.  That case is easily distinguishable on the basis of the statutory provisions involved.

7

construction given to a statute by those charged with the duty of executing it is always entitled to the most respectful consideration and ought not to be overruled without cogent reasons.'" *Oakland Schs Bd of Ed v Superintendent of Pub Inst,* 401 Mich 37, 41; 257 NW2d 73 (1977), quoting *United States v Moore*, 95 US (5 Otto) 760; 24 L Ed 588 (1877).

The majority offers no cogent reason to deviate from the administrative agencies' interpretations, which provide a reasonable construction of the statutory language consistent with the purpose and the policy of the MESA. This Court should accord that interpretation due deference and hold that plaintiff did not receive a retirement benefit within the meaning of § 27(f) of the MESA.

## II. PUBLIC POLICY

The controversy here regarding the correct interpretation of the statutory definition of "retirement benefit" is best resolved by considering the public policy expressly declared in the MESA. It provides:

> Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this state. Involuntary unemployment is a subject of general interest and concern which requires action by the legislature to prevent its spread and to lighten its burden which so often falls with crushing force upon the unemployed worker and his family, to the detriment of the welfare of the people of this state. Social security requires protection against this hazard of our economic life. Employers should be encouraged to provide stable employment. The systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment by the setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own, thus maintaining purchasing power and limiting the serious social consequences of relief assistance, is for the public good, and

8

the general welfare of the people of this state.
[MCL 421.2.]

The majority disregards this part of the act despite the fact that the Legislature's declaration of public policy contained there is of paramount importance. Plaintiff lost her position with defendant as a result of defendant's decision to close the facility where she worked. She had vested pension benefits that defendant distributed and treated as hers prematurely.

Had defendant offered plaintiff reasonable employment, plaintiff could have left her pension benefits undisturbed. Instead, it terminated plaintiff's employment and prevented her from drawing unemployment benefits. It required her to choose between paying her current living expenses or preseving her retirement monies, contrary to the explicit public policy of the state. Defendant's scheme only exacerbated plaintiff's economic insecurity.

### III.  CONCLUSION

Ambiguity exists in the statutory language of § 27(f)(4)(a) of the MESA that defines a "retirement benefit" as not including an amount paid in the course of liquidation of a private pension or retirement fund. The Court should ascertain the Legislature's intent in using that expression by referring to the stated purpose of the MESA and the underlying public policy. With these in mind, the only reasonable construction is one that defines a pension distribution made under the circumstances of this case as not constituting a "retirement benefit."

9

The meaning of "receive" is also subject to differing reasonable interpretations. In construing it, this Court should defer to the meaning that the state and federal agencies responsible for administering unemployment compensation have given to it. The majority ignores this principle, preferring a definition constructed from a dissenting opinion and dictionary definitions, which it contends is in keeping with the plain meaning of the statute. This approach is contrary to the reasonable interpretation advanced by the administrative agencies and to the purpose of and the policy underlying the MESA. The term should be construed as not inclusive of retirement funds transferred directly into an individual retirement account.

I would affirm the Court of Appeals holding that plaintiff was entitled to unemployment compensation benefits under the MESA.

MARKMAN, J., took no part in the decision of this case.