# STATE OF MICHIGAN

# COURT OF APPEALS

INNOVATION VENTURES, L.L.C., d/b/a
LIVING ESSENTIALS,

      Plaintiff-Appellant,

v

LIQUID MANUFACTURING, L.L.C., K & L
DEVELOPMENT OF MICHIGAN, L.L.C., LXR
BIOTECH L.L.C., ETERNAL ENERGY, L.L.C.,
ANDREW KRAUSE, and PETER PAISLEY,

      Defendants-Appellees.

UNPUBLISHED
October 23, 2014

No. 315519
Oakland Circuit Court
LC No. 2012-124554-CZ

Before: STEPHENS, P.J., and TALBOT and BECKERING, JJ.

PER CURIAM.

In this action, plaintiff, Innovation Ventures, LLC, d/b/a Living Essentials, raises several tort and breach of contract claims against defendants Liquid Manufacturing, LLC, K & L Development of Michigan, LLC, and Peter Paisley and Andrew Krause, the presidents and owners of Liquid Manufacturing and K & L Development, respectively. Plaintiff, who produces and sells a product known as 5 Hour Energy, alleges that defendant Liquid Manufacturing, the former bottler of plaintiff's product, and defendant K & L Development, which acted as an independent contractor for plaintiff, breached non-competition and confidentiality provisions in various contractual agreements, misappropriated trade secrets, and engaged in other tortious conduct by forming defendants, Eternal Energy, LLC, and LXR Biotech, LLC, to produce and sell a product called "Eternal Energy," a competitor to 5 Hour Energy. The trial court granted summary disposition to defendants on all of plaintiff's claims. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case primarily concerns plaintiff's business dealings and contracts with two entities, defendant K & L Development and defendant Liquid Manufacturing.

## A. AGREEMENTS WITH DEFENDANT LIQUID
## MANUFACTURING AND PAISLEY

Concerning defendant Liquid Development, on May 18, 2007, plaintiff entered into a contract entitled "Amended Manufacturing Agreement" (AMA) whereby plaintiff hired

defendant Liquid Manufacturing to bottle 5 Hour Energy. Defendant Peter Paisley is the president and CEO of Liquid Manufacturing. In June 2010, plaintiff terminated its agreement with defendant Liquid Manufacturing, and the parties entered into an agreement to formalize the termination and to formalize plaintiff's exercise of its option to purchase the equipment that defendant Liquid Manufacturing used to bottle plaintiff's product. Plaintiff was to purchase the equipment one year later. The agreement (Termination Agreement) contained various non-disclosure and non-compete provisions, but permitted defendant Liquid Manufacturing to produce a list of 36 "Permitted Products" on the equipment that was formerly used to bottle plaintiff's product; that permission could be revoked for violation of the Termination Agreement. Plaintiff agreed, though, to give defendant Liquid Manufacturing 30 days to cure any violation of the agreement. For all Permitted Products that defendant Liquid Manufacturing produced, it was required to obtain from the company for which it produced the products a confidentiality agreement verifying that the company would not disclose that its product was bottled using the same equipment that had been used to bottle plaintiff's products.

On March 8, 2011, plaintiff sold the beverage production equipment that it purchased from defendant Liquid Manufacturing pursuant to the option to purchase back to defendant Liquid Manufacturing.

## B. AGREEMENTS BETWEEN PLAINTIFF AND DEFENDANTS K & L DEVELOPMENT AND KRAUSE

In approximately 2008, plaintiff reached an oral agreement with defendant Krause and defendant K & L Development whereby those defendants would act as consultants to help design, manufacture, and install certain beverage production and packaging equipment for plaintiff. Defendant Krause was the managing member of K & L Development, a company that is no longer in existence. Among other matters, defendants Krause and K & L installed equipment at defendant Liquid Manufacturing's facility. They also made certain equipment that was specific to plaintiff's packaging needs. In addition, defendant Krause developed a leak-proof cap for plaintiff's 5 Hour Energy bottles.

On April 27, 2009, plaintiff and defendants Krause and K & L Development entered into a written agreement entitled "Equipment Manufacturing and Installation Agreement" (EMI); this was the first written agreement between these parties. The EMI referenced the work that defendants Krause and K & L Development previously performed, and stated that those defendants wished to perform certain manufacturing, designing, and installation services for plaintiff once again, and that plaintiff wished to retain their services once again. The EMI contained non-disclosure and non-compete provisions.

The same day the parties entered into the EMI, defendant K & L Development and plaintiff entered into an agreement entitled "Nondisclosure and Confidentiality Agreement" (NCA) that contained non-disclosure and non-compete clauses. The NCA noted that defendant K & L Development had received and would continue to receive confidential information during the course of its business relationship with plaintiff, and prohibited defendant K & L Development from using or disclosing such information.

-2-

On or about May 10, 2009, less than two weeks after the signing of the EMI and the NCA, plaintiff terminated the parties' business relationship.

## C. FORMATION OF DEFENDANTS ETERNAL ENERGY AND LXR BIOTECH

On September 10, 2010, defendant Eternal Energy, which produces a liquid energy shot known as "Eternal Energy" was formed. On May 9, 2011, defendant LXR Biotech was formed; its registered agent is the same as that of defendant Eternal Energy. Defendant LXR Biotech markets and distributes Eternal Energy in approximately 2-ounce bottles, which is approximately the size of 5 Hour Energy bottles. Defendants Krause and Paisley are members of defendants Eternal Energy and LXR Biotech; defendant Krause is the president of defendant LXR Biotech. Defendant Liquid Manufacturing bottles Eternal Energy. Although Eternal Energy was initially sold in tattoo and piercing parlors, it soon began to be sold in Wal-Mart, which is one of plaintiff's largest retail customers.

On September 20, 2010, ten days after the formation of defendant Eternal Energy, John P. Criso, defendant Liquid Manufacturing's Chief Financial Officer, contacted Andrew M. Kulpa, plaintiff's associate counsel, and requested that Eternal Energy be added to the list of Permitted Products that defendant Liquid Manufacturing could, pursuant to the Termination Agreement, produce. In an e-mail dated September 21, 2010, plaintiff agreed to add Eternal Energy to the list of Permitted Products. Without citing any agreement between the parties, Kulpa stated that any change in Eternal Energy's formula would require plaintiff to seek re-approval of Eternal Energy.

## D. PROCEDURAL HISTORY

On January 27, 2012, plaintiff filed a complaint against defendants, alleging breach of various contractual provisions regarding confidential information and non-compete agreements, as well as separate tort claims for the disclosure of its confidential information. The crux of plaintiff's allegations was that defendant Eternal Energy and/or defendant LXR Biotech wrongfully obtained plaintiff's confidential information and/or trade secrets from defendants Liquid Manufacturing, Paisley, Krause, and/or K & L Development. Plaintiff alleged that one or more defendants used plaintiff's confidential information or trade secrets in marketing, manufacturing, and distributing Eternal Energy, and by representing to Wal-Mart that defendant Liquid Manufacturing previously bottled 5 Hour Energy for plaintiff. Concurrent with the filing of its first amended complaint, plaintiff sent a letter to defendant Paisley alleging a violation of the Termination Agreement. The letter included a demand to cure any and all violations of the Termination Agreement by ceasing the disclosure, if any, of its confidential information or trade secrets, and by assuring that defendant Paisley ensure compliance with the non-disclosure provisions set forth in the Termination Agreement with regard to the companies for which defendant Liquid Manufacturing produced Permitted Products.

On February 19, 2012, defendant Paisley sent a letter to Matthew S. Dolmage, plaintiff's Chief Financial Officer, in response to the January 27, 2012 letter from plaintiff informing defendant Liquid of the alleged violations of the Termination Agreement. The letter noted that the Termination Agreement, to the extent it was enforceable, permitted defendant Liquid Manufacturing 30 days to cure a breach of the agreement. Defendant Paisley concluded that

defendant Liquid cured any breach of the agreement by ceasing to bottle all products that had not been approved as Permitted Products by plaintiff, and by—for the first time—requiring defendant Eternal Energy to execute the requisite confidentiality agreement, as provided in the Termination Agreement.

After being allowed to tour defendant Liquid Manufacturing's facility, plaintiff filed a second amended complaint against defendants, clarifying its allegations and adding new causes of action. In total, plaintiff alleged eight counts against defendants, including: (1) breach of contract against defendants Paisley, Krause, Liquid Manufacturing, and K & L Development for breaches of their respective confidentiality and non-compete agreements with plaintiff; (2) violation of the Michigan Uniform Trade Secrets Act (MUTSA), MCL 445.1901 *et seq.* against all defendants; (3) tortious interference with contract and business relations against all defendants; (4) civil conspiracy against all defendants; (5) unjust enrichment against all defendants; (6) statutory and common law conversion against all defendants; (7) fraud in the inducement against defendants Paisley and Liquid Manufacturing for inducing plaintiff to enter into an agreement whereby defendant Liquid Manufacturing purchased the production equipment that was originally used to bottle plaintiff's products; and (8) declaratory relief that the sale of certain energy drink products violated the parties' various agreements. Plaintiff alleged that defendant Liquid Manufacturing was continuing to produce two liquid energy shots products: Eternal Energy and Perfectly Petite. Perfectly Petite had never been added to the Termination Agreement as a Permitted Product.

Defendants moved for summary disposition in March 2012 on all of plaintiff's claims pursuant to MCR 2.116(C)(8) and (C)(10), and asked the trial court to stay discovery, which the trial court did. In June 2012, the trial court denied the motion in all respects, save for dismissing plaintiff's claims for tortious interference against defendants Krause and Paisley, finding that there were no allegations that either defendant had acted for his own benefit, as opposed to the benefit of the corporate entities at issue. With respect to all other claims, the trial court ruled that plaintiff stated claims upon which relief could be granted, and that, where discovery was incomplete, the trial court concluded that plaintiff presented enough evidence to show that a factual dispute existed.

In the following months, the parties exchanged written discovery requests, and plaintiff sought discovery from third parties, including customers and business associates of defendants. Because of plaintiff's requests to conduct discovery on third parties, defendants moved the trial court for a protective order and to decide their renewed motions for summary disposition, which were forthcoming, before authorizing further discovery. On December 7, 2012, the trial court granted defendants' motions for protective orders and once again stayed discovery pending defendants' motions for summary disposition.

Thereafter, defendants moved for summary disposition on all of plaintiff's claims, and the trial court granted their respective motions. Concerning the breach of contract claims against defendants Liquid Manufacturing and Paisley, the trial court noted that plaintiff's allegations with regard to the confidentiality provisions in the Termination Agreement were essentially that, defendant Liquid Manufacturing's use of the production equipment previously owned by plaintiff inevitably involved the use or disclosure of plaintiff's confidential information; thus, according to plaintiff, it was inevitable that defendant Liquid Manufacturing would use or

-4-

disclose its confidential information. The trial court ruled that, because plaintiff expressly authorized the use of the equipment for bottling the 36 original Permitted Products and Eternal Energy, it could not maintain a claim for the use or disclosure of confidential information related thereto. In addition, the trial court found that the non-compete provision contained in the Termination Agreement was unenforceable because it was an unreasonable restraint on trade.

Concerning the contractual liability of defendants Krause and K & L Development, the trial court concluded that the NCA lacked consideration, and therefore, was invalid. It also found that the non-compete provisions contained in the NCA were unreasonable. Further, the trial court found that defendant Krause could not be personally liable under the EMI because the EMI expressly excluded from the definition of "confidential information" used therein any information that defendant Krause learned before the signing of the EMI.

Upon granting summary disposition to defendants on plaintiff's breach of contract claims, the trial court found that defendants were entitled to summary disposition on plaintiff's remaining claims, ruling that: (1) plaintiff failed to establish the existence of a trade secret; (2) plaintiff failed to establish a genuine issue of material fact concerning tortious interference because the NCA lacked consideration and because it expressly authorized the disclosures by defendants Liquid Manufacturing and Paisley about which it complained; (3) there could be no claim for unjust enrichment because there were express contracts between the parties; (4) plaintiff failed to plead fraud with particularity so it failed to state a claim for fraudulent inducement; (5) where there was no genuine issue of material fact concerning the use or disclosure of plaintiff's confidential information, plaintiff's conversion claim must fail; (6) plaintiff's claim for civil conspiracy must fail where plaintiff failed to establish any of its tort claims; and (7) defendants, rather than plaintiff, were entitled to declaratory relief.

## II. SUMMARY DISPOSITION AS TO PLAINTIFF'S CONTRACT CLAIMS

### A. LIABILITY OF DEFENDANTS PAISLEY AND LIQUID MANUFACTURING UNDER THE NON-COMPETE PROVISION OF THE TERMINATION AGREEMENT

Plaintiff first argues that the trial court erred by granting summary disposition to defendants Paisley and Liquid Manufacturing with regard to plaintiff's claims that those defendants breached the non-compete provision contained in the Termination Agreement. This Court reviews the trial court's decision to grant summary disposition de novo. *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). Defendants moved for summary disposition on this claim pursuant to MCR 2.116(C)(8) and (C)(10). Although the trial court did not state the subrule under which it granted summary disposition, we consider the motion to have been granted under MCR 2.116(C)(10) because the record reveals that the trial court relied on information outside of the pleadings. See *Hughes v Region VII Area Agency on Aging*, 277 Mich App 268, 273; 744 NW2d 10 (2007). Resolution of this issue also requires interpretation of the Termination Agreement. Contract interpretation is a question of law this Court reviews de novo. *Citizens Ins Co v Secura Ins*, 279 Mich App 69, 72; 755 NW2d 563 (2008). Additionally, "[t]he reasonableness of a noncompetition provision is a question of law when the relevant facts are undisputed." *Coates v Bastian Bros, Inc*, 276 Mich App 498, 506; 741 NW2d 539 (2007).

Under the Termination Agreement, plaintiff was permitted to produce certain, enumerated Permitted Products. Other than those products, the Termination Agreement provided that:

> for a period of 3 years from the Effective Date, Liquid shall not produce or formulate other than for [plaintiff] (i) an Energy Drink (as defined in Section 24 below), in packaging of 4 fluid ounces or less, or (ii) any other Energy Drink containing glucuronolactone or tyrosine (in all its forms) regardless of package size.

Plaintiff contends that defendants Liquid Manufacturing and Paisley violated the Termination Agreement's non-compete provision by bottling Eternal Energy and Perfectly Petite.

"As a general matter, courts presume the legality, validity, and enforceability of contracts." *Coates*, 276 Mich App at 507. However, "noncompetition agreements are disfavored as restraints on commerce and are only enforceable to the extent they are reasonable." *Id.* See also *Thermatool Corp v Borzym*, 227 Mich App 366, 372; 575 NW2d 334 (1998).

> Thus, a restrictive covenant must protect an employer's reasonable competitive business interests, but its protection in terms of duration, geographical scope, and the type of employment or line of business must be reasonable. Additionally, a restrictive covenant must be reasonable as between the parties, and it must not be specially injurious to the public. [*St Clair Med, PC v Borgiel*, 270 Mich App 260, 266; 715 NW2d 914 (2006).]

In order to be reasonable, "a restrictive covenant must protect against the employee's gaining some unfair advantage in competition with the employer, but not prohibit the employee from using general knowledge or skill." *Coates*, 276 Mich App at 507 (quotation omitted). In addition, "[b]ecause the prohibition on all competition is in restraint of trade, an employer's business interest justifying a restrictive covenant must be greater than merely preventing competition." *St Clair Med, PC*, 270 Mich App at 266. "The burden of demonstrating the validity of the agreement is on the party seeking enforcement." *Coates*, 276 Mich App at 508.

As an initial matter, we find that defendant Paisley cannot be personally liable under the Termination Agreement because, although he signed the agreement, he did so in his capacity as a corporate officer, and not as an individual. A corporate officer generally is not liable for the obligations of the corporation. See *Duray Dev, LLC v Perrin*, 288 Mich App 143, 151; 792 NW2d 749 (2010); *Livonia Bldg Materials v Harrison Const Co*, 276 Mich App 514, 523-524; 742 NW2d 140 (2007). Moreover, although the Termination Agreement purports to bind the employees of defendant Liquid Manufacturing, one of whom is defendant Paisley, where the Termination Agreement, which imposed a three-year restraint on competition, could not be performed within one year, the statute of frauds required that in order to be enforceable, the Termination Agreement had to be signed by the party to be charged. MCL 566.132(1)(a). Where enforcement is sought against defendant Paisley, who did not sign the contract, MCL 566.132(1)(a) precludes enforcement of the contract against defendant Paisley.

Concerning defendant Liquid Manufacturing, the trial court did not err by finding that there was no genuine issue of material fact related to the production of Eternal Energy. Plaintiff expressly approved the bottling of Eternal Energy as a Permitted Product in a September 21, 2010 e-mail. Although defendant Liquid Manufacturing initially breached the Termination Agreement by failing to have defendant Eternal Energy execute the requisite non-disclosure agreement, defendant Liquid Manufacturing cured that breach within the time specified by the contract after receiving notice of the breach from plaintiff. In reaching this conclusion, we reject plaintiff's arguments that it only granted provisional or conditional approval of Eternal Energy based on its then-existing formula or distribution strategy because the record belies plaintiff's claims, and because the Termination Agreement never provided for the type of provisional or conditional approval allegedly granted by plaintiff in this case.

Furthermore, we find the trial court correctly granted summary disposition to defendant Liquid Manufacturing with regard to its production of any product, including Perfectly Petite, because we agree that the non-compete provision contained in the Termination Agreement was unreasonable and unenforceable. See *Coates*, 276 Mich App at 507 (a noncompetition agreement is only enforceable to the extent it is reasonable). The non-compete provision contained in paragraph 1 of the Termination Agreement contains a broad provision preventing defendant Liquid Manufacturing from bottling any energy drink in packaging of four ounces or less without prior approval from plaintiff. The burden of demonstrating the validity of a non-compete agreement is on the party seeking its enforcement. *Id.* at 508. When asked to identify the legitimate business purposes furthered by the non-compete provision, plaintiff stated the following in its October 24, 2012 fourth supplemental response to defendant Liquid Manufacturing's request for interrogatories:

> Under the Agreement to Terminate, Plaintiff *had the right to evaluate, on a case-by-case basis, each brand of energy drink that Liquid Manufacturing proposed to bottle. Products that were approved by Plaintiff were limited in distribution and production, such that Plaintiff believed that the bottling of the product would not infringe on Plaintiff's legitimate business interests.* Contingent on Plaintiff's approval, each proposed energy drink manufacturer was required to execute a confidentiality agreement with Liquid Manufacturing and to follow other contractual specifications. In the event that Liquid Manufacturing or the product did not follow these procedural safeguards embodied in the Agreement to Terminate, such as failing to execute a confidentiality agreement, Plaintiff's legitimate business interest in protecting its goodwill and confidential information was harmed. *For example, Plaintiff's legitimate business interests in protecting its goodwill and confidential information are harmed by Liquid Manufacturing's bottling of Eternal Energy because it was ultimately distributed to a significantly broader area than originally proposed and provisionally approved*, Eternal Energy failed to execute a confidentiality agreement, and Liquid Manufacturing failed to seek authorization when the formula changed. [Emphasis added.]

By plaintiff's own admission, plaintiff used the non-compete provisions to approve the bottling of those products that were "limited in distribution and production," thereby allowing plaintiff to handpick the competing products that defendant Liquid Manufacturing could bottle. While preventing unfair competition is a legitimate business purpose that can be protected by a

non-compete agreement, the prevention of fair competition is not. *St Clair Med, PC*, 270 Mich App at 266. Where defendant Liquid Manufacturing only bottled products and did not produce its own products, such a broad restraint on defendant Liquid Manufacturing was unreasonable. See *Coates*, 276 Mich App at 506 (examining the totality of the circumstances in determining reasonableness). Indeed, this is particularly so where plaintiff subsequently sold the bottling equipment to defendant Liquid Manufacturing, then sought to use the non-compete provisions to control what defendant Liquid Manufacturing could do with its own equipment. Further, we reject plaintiff's claim that the non-compete provision was reasonable because it was intended to prevent the disclosure of its confidential information. Preventing the anti-competitive use of confidential information is a legitimate business interest. *Rooyakker & Sitz, PLLC v Plante & Moran, PLLC*, 276 Mich App 146, 158; 742 NW2d 409 (2007). Here, though, as discussed *infra*, plaintiff expressly authorized any alleged use of confidential information in bottling products when it granted defendant Liquid Manufacturing express approval to bottle competing products on the same equipment that was used to bottle plaintiff's product.

Moreover, we reject plaintiff's argument that the non-compete provision was reasonable because it was intended to protect plaintiff's goodwill. Protecting the goodwill that a party has built up with clients is a legitimate purpose. *St Clair Med, PC*, 270 Mich App at 268. However, plaintiff's argument ignores the fact that the non-compete provision was a broad, all-encompassing provision that plaintiff admitted was designed to allow it to handpick the competitors for whom defendant Liquid Manufacturing could bottle products. Despite plaintiff's representation of the non-compete provision as a provision protecting its goodwill, the broad nature of the provision demonstrates that it is unreasonable.

In addition, we reject plaintiff's contention, made in passing, that defendant cannot be heard to complain about the non-compete provision when the Termination Agreement contained a provision stating that the provision was reasonable. Our Supreme Court has recognized that courts, not parties to a contract, are to determine the reasonableness of a contract that contains a restraint on trade. See *Rory v Continental Ins Co*, 473 Mich 457, 475 n 32; 703 NW2d 23 (2005).

Lastly, plaintiff argues that even if the non-compete provision is unreasonable, this Court should reform the provision and strike any unreasonable terms. Courts may reform a noncompetition agreement if it is found to be unreasonable. See, e.g., *Hopkins v Crantz*, 334 Mich 300, 304; 54 NW2d 671 (1952). Here, however, plaintiff makes no effort to argue whether any portions of the provision are reasonable and could be enforced, nor does plaintiff suggest how the provision could be reformed in a manner that would be reasonable. Thus, plaintiff abandoned the claim. *Berger v Berger*, 277 Mich App 700, 712; 747 NW2d 336 (2008) ("A party abandons a claim when it fails to make a meaningful argument in support of its position."). Moreover, we have found no authority stating that a court *must* reform an unreasonable non-compete provision.

## B. LIABILITY OF DEFENDANTS PAISLEY AND LIQUID MANUFACTURING UNDER THE TERMINATION AGREEMENT

Next, plaintiff argues that the trial court erred by granting summary disposition to defendants Liquid Manufacturing and Paisley with regard to alleged breaches of the confidentiality provisions contained in the Termination Agreement. We review this issue de novo. *Latham*, 480 Mich at 111.

The Termination Agreement contains confidentiality and non-disclosure provisions that provide, among other matters, that defendant Liquid, and/or its employees "shall not disclose to representatives from any company or any other person or entity at any time or in any manner any of [plaintiff's] confidential information relating to the formulation, manufacture, production, sale or distribution of [plaintiff's] products . . . ." The Termination Agreement also restricts the use of any confidential information that defendant Liquid and/or its employees learned from plaintiff.

Plaintiff maintains that defendants Liquid and Paisley[1] "must necessarily *use* Plaintiff/Appellant's confidential information in bottling liquid energy shots." As discussed *supra*, plaintiff expressly authorized defendant Liquid to bottle a number of Permitted Products, including liquid energy shots such as Eternal Energy. Additionally, plaintiff did so knowing that defendant Liquid Manufacturing would be using the same equipment that was used to bottle 5 Hour Energy. Indeed, the Termination Agreement anticipated such use, stating, "[plaintiff] shall have priority over any other parties for which [defendant] Liquid provides services on the Manufacturing Equipment." And, plaintiff eventually sold the bottling equipment to defendant Liquid Manufacturing. In light of these facts, defendants Liquid Manufacturing and Paisley are entitled to judgment as a matter of law with regard to plaintiff's claim for breach of the above-noted confidentiality provisions because plaintiff expressly authorized the disclosure about which it now complains. Where plaintiff expressly approved defendant Liquid Manufacturing's bottling of 37 Permitted Products, which included liquid energy shots, plaintiff authorized the disclosure of the alleged confidential information, and cannot be heard to complain about such disclosure. See *Landelius v Sackellares*, 453 Mich 470, 481; 556 NW2d 472 (1996) (explaining that once disclosure of certain information is authorized, the party authorizing the disclosure cannot assert a claim based on the disclosure). Indeed, although plaintiff required the companies for whom defendant Liquid Manufacturing produced Permitted Products to enter into confidentiality agreements regarding where the product was made, it never took any steps to protect the alleged confidential information that it claims was "necessarily use[d]" by defendant Liquid Manufacturing in bottling liquid energy shots. Thus, based on plaintiff's express approval of defendant Liquid Manufacturing's bottling of liquid energy shots, it waived enforcement of the confidentiality provisions in this regard. See *Quality Prods & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 372-374; 666 NW2d 251 (2003).

---

[1] Again, as discussed *supra*, we find that defendant Paisley cannot be personally liable under the contract where he only signed in his capacity as an officer.

Citing an anti-waiver provision in the Termination Agreement, plaintiff argues that it could not have waived enforcement of the confidentiality provisions in this regard. This argument is meritless. Even when a contract contains an anti-waiver provision, the parties may still waive or modify the contract by their subsequent actions. *Id.* at 372. "This is because the parties possess, and never cease to possess, the freedom to contract even after the original contract has been executed." *Id.* In order to establish waiver in light of an anti-waiver or anti-modification provision, there must be "a mutual intention of the parties to waive or modify the original contract." *Id.* One way to show a mutual intent to waive a contract or term is by express agreement of the parties. *Id.* at 373. Here, plaintiff expressly agreed, in writing, to allow defendant Liquid Manufacturing to bottle the 37 Permitted Products, some of which constituted liquid energy shots. Thus, there is no genuine issue of material fact that plaintiff, by expressly authorizing the bottling of those products, waived any claim that bottling liquid energy shots on the production equipment constitutes a violation of the confidentiality provisions contained in the Termination Agreement.

## C. CONTRACTUAL LIABILITY OF DEFENDANTS KRAUSE AND K & L DEVELOPMENT

Next, plaintiff argues that the trial court erred by granting summary disposition to defendants Krause and K & L Development concerning plaintiff's claims that those defendants violated the non-disclosure and non-compete provisions of the EMI and NCA. We review this issue de novo. *Latham*, 480 Mich at 111. Again, because the trial court considered information outside the pleadings when it granted summary disposition, we consider the motion to have been granted under MCR 2.116(C)(10). *Hughes*, 277 Mich App at 273.

Both the EMI and NCA contained non-disclosure and non-compete provisions. We find that defendants Krause and K & L Development were entitled to summary disposition as to all of plaintiff's claims arising out of these contracts because the contracts were unenforceable for a failure of consideration. In order to be valid, a contract must have, among other matters, legal consideration. *Calhoun Co v Blue Cross Blue Shield of Mich*, 297 Mich App 1, 13; 824 NW2d 202 (2012). Here, defendants Krause and K & L Development performed work for plaintiff as independent contractors whose work was terminable at the will of any of the parties, without cause. Both the EMI and NCA stated that the consideration for the respective agreements was the promise of a continuing business relationship and employment. We have held that "[m]ere continuation of employment is sufficient consideration to support a noncompete agreement in an at-will employment setting." *QIS, Inc v Indus Quality Control, Inc*, 262 Mich App 592, 594; 686 NW2d 788 (2004). Thus, the agreements, on their face, contained valid consideration for the execution of the NCA and EMI. See *id.*

Nevertheless, although the agreements purported to provide valid consideration, there was no genuine issue of material fact that the discontinuation of the business/employment relationship within two weeks of the signing of the agreements constituted a failure of consideration. In general, a complete or substantial failure of consideration may justify the rescission of a written instrument." *In re Rudell Estate*, 286 Mich App 391, 403; 780 NW2d 884 (2009). In *Adell Broadcasting v Apex Media Sales*, 269 Mich App 6, 12-13; 708 NW2d 778 (2005), this Court described a "failure of consideration" as a situation where consideration may

have existed, but has either ceased to exist or was not given. This Court further described a failure of consideration as a failure of performance. *Id.* at 13. This Court added that "rescission is permissible when there is failure to perform a substantial part of the contract or one of its essential items, or where the contract would not have been made if default in that particular had been expected or contemplated." *Id.* at 13-14 (quotation omitted).

The agreement at issue in *Adell Broadcasting* involved a business relationship between the plaintiff, a television station, and the defendant, Apex Media Sales, Inc., who served as plaintiff's exclusive media representative for broadcast spot and program sales. *Id.* at 7-8. When both parties became dissatisfied with the other's performance, they agreed to amend their working agreement, and agreed, rather than ending the business relationship, to continue engaging the other's services. *Id.* at 8-9. This Court explained that "the consideration for the amended agreement was the continuation of the parties' business relationship." *Id.* at 14. Where the parties thereafter continued their business relationship and performed work for the other, this Court found that there was no question of material fact that there was not a failure of consideration. *Id.* ("The parties continued their business relationship, so there is no question of material fact that there was no failure of consideration.").

In contrast to *Adell Broadcasting*, the parties' business relationship ended soon after they entered into the EMI and NCA. Accordingly, defendants Krause and K & L Development never received that which they were promised under the agreements. Although continued employment would serve as consideration, see *QIS, Inc*, 262 Mich App at 594, where that continued employment was offered, but never given, the termination of the business relationship constitutes a failure of consideration, cf. *Adell Broadcasting*, 269 Mich App at 14. Indeed, consideration requires a bargained-for exchange. *General Motors Corp v Dep't of Treasury*, 466 Mich 231, 239; 644 NW2d 734 (2002). "There must be a benefit on one side, or a detriment suffered, or service done on the other." *Id.* (quotation omitted). Here, the consideration purported to be that plaintiff, who employed defendants Krause and K & L on an at-will basis, would forego its right to immediately terminate the employment relationship in exchange for defendants signing the NCA and EMI. Where plaintiff terminated the business relationship within two weeks after the agreements were signed, plaintiff's forbearance in terminating the relationship amounted to a nullity. Other jurisdictions have held that the continued employment promised in exchange for signing a non-compete agreement must be "for a substantial time after the covenant was signed." See, e.g., *Lucht's Concrete Pumping v Horner*, 255 P 3d 1058, 1063 (Colo, 2011); *Brown & Brown, Inc v Mudron*, 379 Ill App 3d 724, 728; 887 NE2d 437 (2008); *Summits 7, Inc v Kelly*, 178 Vt 396, 405; 886 A2d 365 (2005); *Curtis 1000, Inc v Suess*, 24 F3d 941, 946 (CA 7, 1994) (citations omitted) (explaining that Illinois law requires "that for continued employment to count as consideration it must be for a 'substantial period.' "); *Zellner v Stephen D Conrad, MD, PC*, 183 Ad2d 250, 256; 589 NYS2d 903 (1992) (explaining that, although an employer has the right to terminate the employment of an at-will employee at any time, and forbearance of that right is a legal detriment that can constitute consideration, "[i]t is certainly true that this detriment would have little meaning if the employer exercised his right to terminate the employment shortly after the execution of the agreement."); *Central Adjustment Bureau, Inc v Ingram*, 678 SW2d 28, 35

(Tenn 1984); *Simko, Inc v Graymar Co*, 55 Md App 561, 567; 464 A2d 1104 (1983).[2]  As such, neither the confidentiality provisions nor the non-compete provisions at issue are enforceable, and there is no genuine issue of material fact with regard to plaintiff's claim for breach of contract related thereto.  Although the trial court did not articulate a failure of consideration as its reason for granting summary disposition, this Court can nevertheless affirm the trial court's decision, albeit for alternate reasons.  *Gleason v Mich Dep't of Transp*, 256 Mich App 1, 3; 662 NW2d 822 (2003).

### III.  SUMMARY DISPOSITION AS TO PLAINTIFF'S NON-CONTRACT CLAIMS

Next, plaintiff challenges the trial court's grant of summary disposition with regard to its claims for violation of the MUTSA, tortious interference with a contract and/or business expectancy, conversion, civil conspiracy, unjust enrichment, and fraudulent inducement.  We review plaintiff's claims de novo.  *Latham*, 480 Mich at 111.  With the exception of plaintiff's claim for fraudulent inducement, the trial court either expressly cited MCR 2.116(C)(10) as the grounds pursuant to which summary disposition was appropriate, or it relied on information outside the pleadings in granting defendants' motions for summary disposition.  Thus, this Court considers the trial court's grant of summary disposition as to those claims to have been pursuant to MCR 2.116(C)(10).  See *Hughes*, 277 Mich App at 273.  Concerning plaintiff's claim for fraudulent inducement, the trial court expressly granted summary disposition pursuant to MCR 2.116(C)(8).  "A motion brought under [MCR 2.116(C)(8)] tests the legal sufficiency of the complaint solely on the basis of the pleadings."  *Dalley v Dykema Gossett*, 287 Mich App 296, 304; 788 NW2d 679 (2010).  "A court may grant summary disposition under MCR 2.116(C)(8) if '[t]he opposing party has failed to state a claim on which relief can be granted.'"  *Id.*, quoting MCR 2.116(C)(8).

As an initial matter, plaintiff notes that defendants did not raise any specific arguments with regard to the non-contract claims in their respective motions for summary disposition, and protests the trial court's ability to grant summary disposition on arguments that were not raised by defendants.  There is no merit to plaintiff's claim because MCR 2.116(I)(1) provides that "[i]f the pleadings show that a party is entitled to judgment as a matter of law, or if the affidavits or other proofs show that there is no genuine issue of material fact, the court shall render judgment without delay."  "Under MCR 2.116(I)(1), the trial court is affirmatively required to 'render judgment without delay' when 'the pleadings show that a party is entitled to judgment as a matter of law.'"  *Sobiecki v Dep't of Corrections*, 271 Mich App 139, 141; 721 NW2d 229 (2006) (quotation omitted).  Moreover, because plaintiff had the opportunity to, but did not, move for reconsideration, we find nothing amiss about the trial court's decision to *sua sponte* grant summary disposition on those claims.  See *Al-Maliki v LaGrant*, 286 Mich App 483, 489; 781 NW2d 853 (2009).

---

[2]  Although decisions from other jurisdictions are not binding, they may be considered for persuasive value.  *Hiner v Mojica*, 271 Mich App 604, 612; 722 NW2d 914 (2006).

## A. PLAINTIFF'S TRADE SECRET CLAIM

Under the MUTSA, a "trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process" that derives independent economic value from not being generally known or readily ascertainable, and that is the subject of reasonable efforts to maintain its secrecy. MCL 445.1902(d). The party claiming that a trade secret has been misappropriated "bears the burden of pleading and proving the specific nature of the trade secret." *Dura Global Technologies, Inc v Magna Donnelly Corp*, 662 F Supp 2d 855, 859 (ED Mich, 2009) (quotation omitted).[3] "A party alleging trade secret misappropriation must particularize and identify the purported misappropriated trade secrets with specificity." *Id.* (quotation omitted).

In granting summary disposition, the trial court noted that plaintiff failed to allege any trade secrets beyond the bottling process for liquid energy shots. As the trial court correctly recognized, the bottling process cannot constitute a trade secret where plaintiff disclosed it by expressly authorizing defendant Liquid Manufacturing to bottle for 37 companies, and by not requiring defendant Liquid Manufacturing to maintain the secrecy of the bottling process. See MCL 445.1902(d) (explaining that a trade secret must be "the subject of efforts that are reasonable under the circumstances to maintain its secrecy."). In addition, although plaintiff claims that it alleged a variety of other trade secrets, it has, on several occasions, failed to state any trade secrets that were allegedly violated. Therefore, summary disposition was appropriate. See *Dura Global Tech*, 662 F Supp 2d at 859. Further, plaintiff does not state how those trade secrets were misappropriated in violation of MCL 445.1902(d). And, defendant Krause stated in an affidavit that he did not receive any confidential information from plaintiff regarding Five Hour Energy's formula, ingredients, pricing, or customers. Based on defendants' evidence, that plaintiff did not make any effort to keep the bottling process a trade secret and that defendant Krause did not obtain any confidential information from plaintiff, and on plaintiff's conclusory allegations that defendants misappropriated trade secrets, summary disposition was appropriate. See *Quinto v Cross & Peters Co*, 451 Mich 358, 371-372; 547 NW2d 314 (1996) (explaining that conclusory allegations are not sufficient to survive a properly supported motion for summary disposition).

## B. PLAINTIFF'S TORTIOUS INTERFERENCE CLAIMS

In its complaint, plaintiff alleged tortious interference with a contract as well as tortious interference with a business expectancy against all defendants. We find that plaintiff abandoned this claim on appeal by simply alleging, without elaboration, that it "adequately pled each of the elements of tortious interference." See *Berger*, 277 Mich App at 712. Moreover, we have reviewed plaintiff's claims and found that defendants were entitled to judgment as a matter of law because there was no genuine issue of material fact that defendants did not tortiously

---

[3] Because the purpose of the MUTSA is to "make uniform the law" with respect to other jurisdictions, see MCL 445.1909, we look to the law of other jurisdictions when interpreting the act, see *Power Press Sales Co v MSI Battle Creek Stamping*, 238 Mich App 173, 180; 604 NW2d 772 (1999).

interfere with any of plaintiff's contractual agreements, nor was there a genuine issue of material fact concerning defendants' use or disclosure of confidential information beyond the bottling process, which was not wrongful because it was authorized by plaintiff. See *Dalley*, 287 Mich App at 323-324 (explaining that a plaintiff, in alleging tortious interference, must establish that the defendant's conduct was either improper or without justification).

## C. PLAINTIFF'S UNJUST ENRICHMENT CLAIM

"A claim of unjust enrichment requires the complaining party to establish (1) the receipt of a benefit by the other party from the complaining party and (2) an inequity resulting to the complaining party because of the retention of the benefit by the other party." *Karaus v Bank of New York Mellon*, 300 Mich App 9, 22-23; 831 NW2d 897 (2012). "Not all enrichment is unjust in nature, and the key to determining whether enrichment is unjust is determining whether a party unjustly received and retained an independent benefit." *Id.* at 23. "If this is established, the law will imply a contract in order to prevent unjust enrichment." *Belle Isle Grill Corp v Detroit*, 256 Mich App 463, 478; 666 NW2d 271 (2003).

The trial court concluded that because there were express contracts between the parties, plaintiff could not maintain a claim for unjust enrichment. In general, "a contract will be implied only if there is no express contract covering the same subject matter." *Id.* However, "[t]he application of this rule presupposes the existence of a valid, enforceable contract." *Biagini v Mocnik*, 369 Mich 657, 659; 120 NW2d 827 (1963). Where the parties' contract is found to be invalid or unenforceable, the general rule barring recovery in the face of an express contract does not apply. *Id.*

The trial court's reasoning was correct with regard to plaintiff's claims against defendants Paisley and Liquid Manufacturing, but incorrect as to defendants Krause and K & L Development. As discussed above, the Termination Agreement between defendants Paisley and Liquid Manufacturing was not held to be invalid or unenforceable with regard to provisions relating to confidential information; rather, the trial court aptly noted that any claim based on the disclosure of confidential information related to the bottling process was without merit because plaintiff expressly authorized such disclosure. Thus, contrary to plaintiff's contentions on appeal, there was an express, valid contract between defendants Paisley and Liquid Manufacturing that pertained to the disclosure of confidential information, and plaintiff could not maintain a claim for unjust enrichment related thereto. *Belle Isle Grill Corp*, 256 Mich App at 478.

However, as plaintiff correctly recognizes, the trial court's reasoning concerning defendants Krause and K & L Development was erroneous. Where the EMI and NCA were found to be invalid and unenforceable, plaintiff's unjust enrichment claims do not fail simply because there were express contracts concerning plaintiff's confidential information. See *Biagini*, 369 Mich at 659.

Nevertheless, although the trial court's reasoning with regard to these claims was incorrect, we can affirm the trial court's decision, albeit on different grounds. See *Gleason*, 256 Mich App at 3. Plaintiff's allegations are based on the use or misappropriation of confidential information. In order to maintain a claim for unjust enrichment, there must be a benefit

-14-

conferred upon a party. *Karaus*, 300 Mich App at 23-24. Here, defendant Krause averred that he did not receive any confidential information from plaintiff regarding Five Hour Energy's formula, ingredients, pricing, or customers. Although plaintiff presented affidavits from two of its executives in which they averred that defendants must have used plaintiff's confidential information, plaintiff's conclusory allegations do not constitute a genuine issue of material fact. See *Quinto*, 451 Mich at 371-372 (noting that conclusory allegations are not sufficient to survive a properly supported motion for summary disposition). Thus, plaintiff's claim must fail because there was no genuine issue of material fact regarding a benefit received. See *Karaus*, 300 Mich App at 23-24. Moreover, even assuming defendants Krause and K & L Development possessed such confidential information, there is no evidence that either defendant requested this benefit or that they engaged in any effort to acquire the same. Therefore, even assuming they received confidential information, there was no enrichment that was *unjust*. See *Morris Pumps v Centerline Piping, Inc*, 273 Mich App 187, 196; 729 NW2d 898 (2006) (explaining that not all enrichment is unjust).[4]

## D. PLAINTIFF'S CONVERSION CLAIM

The trial court did not err by finding that there was no genuine issue of material fact concerning plaintiff's claims for statutory and common law conversion. Concerning statutory conversion, MCL 600.2919a(1) provides a cause of action for "[a]nother person's stealing or embezzling property or converting property to the other person's own use." "Statutory conversion consists of knowingly buying, receiving, or aiding in the concealment of any stolen, embezzled, or converted property." *Lawsuit Fin, LLC v Curry*, 261 Mich App 579, 592-593; 683 NW2d 233 (2004). Common law conversion "consists of any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Dep't of Agriculture v Appletree Mktg, LLC*, 485 Mich 1, 13-14; 779 NW2d 237 (2010) (quotation omitted).

Plaintiff's conversion claims were premised on defendants' alleged use or disclosure of plaintiff's confidential information and/or trade secrets. As an initial matter, plaintiff's claims must fail with regard to defendants Liquid Manufacturing and Paisley because plaintiff expressly authorized the disclosure about which it complains, i.e., using the equipment to bottle liquid energy shots. Thus, there is no genuine issue of material fact regarding whether defendants Liquid Manufacturing and Paisley exercised dominion and control over plaintiff's property. See *id.* Additionally, as noted above, defendants Krause and K & L Development produced evidence refuting plaintiff's allegations that they used or disclosed confidential information and/or trade secrets, and plaintiff has failed to present any evidence, beyond its mere speculation, that any defendants used or disclosed confidential information or trade secrets. As such, there was no

---

[4] Lastly, we note that although plaintiff's complaint raised a claim for unjust enrichment against defendants Eternal Energy and LXR Biotech, it never alleged that those defendants received a benefit *from plaintiff*. Thus, plaintiff's claim must fail with regard to those defendants. See *Karaus*, 300 Mich App at 23-24 (explaining that there must be a benefit conferred upon the other party).

genuine issue of material fact with regard to whether these defendants wrongfully exerted dominion and control over plaintiff's property, and plaintiff's claim must fail with regard to those defendants. See *id.*

### E. PLAINTIFF'S FRAUDULENT INDUCEMENT CLAIM

Plaintiff alleged that defendants Liquid Manufacturing and Paisley fraudulently induced plaintiff into selling the equipment that defendant Liquid Manufacturing used to bottle Permitted Products, including liquid energy shots. Plaintiff alleged that those defendants made material misrepresentations concerning whether they were producing or formulating "any other Energy Drink containing glucuronolactone or tyrosine" and that those defendants made those representations with the intent to induce plaintiff to rely thereon. In addition, plaintiff alleged that it relied on those representations when it decided to sell the bottling equipment to defendant Liquid Manufacturing in 2011.

A plaintiff must plead fraud with particularity. MCR 2.112(B)(1); *State ex rel Gurganus v CVS Caremark Corp*, __ Mich __; __ NW2d __ (Docket Nos. 146791, 146792, and 146793, June 11, 2014). General allegations and "conclusory statements that are unsupported by allegations of fact on which they may be based will not suffice to state a cause of action." *Id.* See also *LaMothe v Auto Club Ins Ass'n*, 214 Mich App 557, 586; 543 NW2d 42 (1995). Here, plaintiff failed to plead its allegations of fraud with particularity. Although plaintiff alleged that defendants Paisley and Liquid Manufacturing made material misrepresentations concerning whether they were producing or formulating "any other Energy Drink containing glucuronolactone or tyrosine," plaintiff made no allegations as to *when* the allegations were made, *to whom* they were made, or how the allegations were false, i.e., which other drinks defendant Liquid Manufacturing was producing. Indeed, it is unclear from plaintiff's complaint whether Eternal Energy—a drink that plaintiff expressly approved—was one of the drinks about which plaintiff complained, or if plaintiff complained about other liquid energy shots. As such, plaintiff's allegations of fraud were not pleaded with particularity, and summary disposition was appropriate pursuant to MCR 2.116(C)(8). *Gurganus*, slip op at 19-20; *LaMothe*, 214 Mich App at 586.

### F. PLAINTIFF'S CIVIL CONSPIRACY CLAIM

Summary disposition was also appropriate regarding plaintiff's claim for civil conspiracy. "A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Advocacy Org for Patients & Providers v Auto Club Ins Ass'n*, 257 Mich App 365, 384; 670 NW2d 569 (2003), aff'd 472 Mich 91 (2005) (quotation omitted). "[A] claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable tort." *Id.* (quotation omitted). As discussed *supra*, each of plaintiff's tort claims failed; thus, there was no separate, actionable tort. "Because plaintiff[ ] failed to establish any actionable underlying tort, the conspiracy claim must also fail." *Id.*

## G. OPPORTUNITY TO AMEND

Plaintiff argues that summary disposition as to its non-contract claims was inappropriate because the trial court should have given it the opportunity to amend its complaint in order to cure any deficiencies that may have existed in its pleadings. Plaintiff never moved the trial court to amend its pleadings; thus, the issue is unpreserved and we could decline to consider it. *Richard v Schneiderman & Sherman, PC (On Remand)*, 297 Mich App 271, 273; 824 NW2d 573 (2012); *Nuculovic v Hill*, 287 Mich App 58, 63; 783 NW2d 124 (2010). Moreover, we note that despite arguing that it should have been given the opportunity to amend its complaint, plaintiff does not allege how it could have amended its complaint in a way that would not have been futile. Instead, plaintiff simply makes cursory claims that summary disposition was inappropriate because it was never given the opportunity to amend its pleadings. Where plaintiff has not made a meaningful argument in support of its claim, we will not make arguments for plaintiff. See *Berger*, 277 Mich App at 712. Plaintiff's cursory treatment of this issue constitutes abandonment. *Id.*

## IV. DISCOVERY

Lastly, plaintiff argues that the trial court's grant of summary disposition was premature. We note that the trial court granted summary disposition before the close of the discovery period. "We review a trial court's decision on a motion for summary disposition de novo." *VanVorous v Burmeister*, 262 Mich App 467, 476; 687 NW2d 132 (2004). "We review a trial court's decision regarding discovery for an abuse of discretion." *Id.*

"Generally, summary disposition under MCR 2.116(C)(10) is premature if it is granted before discovery on a disputed issue is complete." *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 292; 769 NW2d 234 (2009). However, that the discovery period remained open "does not automatically mean that the trial court's decision to grant summary disposition was untimely or otherwise inappropriate." *Id.* Instead, "[t]he question is whether further discovery stands a fair chance of uncovering factual support for the opposing party's position." *Id.* The party contending that summary disposition is premature because of incomplete discovery is not entitled to relief without providing "some independent evidence that a factual dispute exists." *VanVorous*, 262 Mich App at 477 (quotation omitted).

Although the discovery period remained open at the time the trial court granted summary disposition, the trial court's grant of summary disposition was appropriate. Despite claiming that additional discovery would produce more facts in support of its claims, plaintiff fails to provide any independent evidence that a factual dispute exists. Instead, plaintiff simply makes broad, unsupported allegations of what additional discovery *could* demonstrate. Plaintiff's claim that further discovery will lead to factual support for its claims is based on nothing more than conjecture. Plaintiff's argument is meritless. *Id.*

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Michael J. Talbot
/s/ Jane M. Beckering

-17-